# MOTION FOR RELIEF FROM STAY

## EXHIBIT A

# PROMISSORY NOTE

| Principal $1,525,000.00 | Loan Date 09-17-2014 | Maturity 09-15-2019 | Loan No | Call / Coll | Account 24978 | Officer 894 | Initials |
|---|---|---|---|---|---|---|---|

References in the boxes above are for Lender's use only and do not limit the applicability of this document to any particular loan or item.
Any item above containing "***" has been omitted due to text length limitations.

**Borrower:** Platinum Property Holdings Incorporated
Piotr Palider

**Lender:** First Merchants Bank, N.A.
Dyer Branch
Woodeland Professional Center
1100 E Joliet Street
Dyer, IN 46311

---

**Principal Amount: $1,525,000.00**                         **Date of Note: September 17, 2014**

**PROMISE TO PAY.** Platinum Property Holdings Incorporated and Piotr Palider ("Borrower") jointly and severally promise to pay to First Merchants Bank, N.A. ("Lender"), or order, in lawful money of the United States of America, the principal amount of One Million Five Hundred Twenty-five Thousand & 00/100 Dollars ($1,525,000.00), together with interest on the unpaid principal balance from September 17, 2014, calculated as described in the "INTEREST CALCULATION METHOD" paragraph using an interest rate of 4.250%, until paid in full. The interest rate may change under the terms and conditions of the "INTEREST AFTER DEFAULT" section.

**PAYMENT.** Borrower will pay this loan in 59 regular payments of $9,491.21 each and one irregular last payment estimated at $1,265,916.55. Borrower's first payment is due October 15, 2014, and all subsequent payments are due on the same day of each month after that. Borrower's final payment will be due on September 15, 2019, and will be for all principal and all accrued interest not yet paid. Payments include principal and interest. Unless otherwise agreed or required by applicable law, payments will be applied first to any accrued interest; then to principal; then to any late charges; and then to any unpaid collection costs. Borrower will pay Lender at Lender's address shown above or at such other place as Lender may designate in writing.

**INTEREST CALCULATION METHOD.** Interest on this Note is computed on a 365/360 basis; that is, by applying the ratio of the interest rate over a year of 360 days, multiplied by the outstanding principal balance, multiplied by the actual number of days the principal balance is outstanding. All interest payable under this Note is computed using this method.

**PREPAYMENT PENALTY.** Upon prepayment of this Note, Lender is entitled to the following prepayment penalty: In the event that the loan is prepaid a fee of 5% of the amount prepaid is due if prepaid in the 1st year, 4% of the amount prepaid is due if prepaid in the 2nd year, 3% of the amount prepaid is due if prepaid in the 3rd year, 2% of the amount prepaid is due if prepaid in the 4th year, and 1% of the amount prepaid is due if prepaid in the 5th year. Except for the foregoing, Borrower may pay all or a portion of the amount owed earlier than it is due. Early payments will not, unless agreed to by Lender in writing, relieve Borrower of Borrower's obligation to continue to make payments under the payment schedule. Rather, early payments will reduce the principal balance due and may result in Borrower's making fewer payments. Borrower agrees not to send Lender payments marked "paid in full", "without recourse", or similar language. If Borrower sends such a payment, Lender may accept it without losing any of Lender's rights under this Note, and Borrower will remain obligated to pay any further amount owed to Lender. All written communications concerning disputed amounts, including any check or other payment instrument that indicates that the payment constitutes "payment in full" of the amount owed or that is tendered with other conditions or limitations or as full satisfaction of a disputed amount must be mailed or delivered to: First Merchants Bank, ATTN: Loan Operations - Final Payment, P.O. Box 7011 Muncie, IN 47308.

**LATE CHARGE.** If a payment is 7 days or more late, Borrower will be charged 5.000% of the unpaid portion of the regularly scheduled payment or $25.00, whichever is greater.

**INTEREST AFTER DEFAULT.** Upon default, including failure to pay upon final maturity, the interest rate on this Note shall be increased by 5.000 percentage points. However, in no event will the interest rate exceed the maximum interest rate limitations under applicable law.

**DEFAULT.** Each of the following shall constitute an event of default ("Event of Default") under this Note:

**Payment Default.** Borrower fails to make any payment when due under this Note.

**Other Defaults.** Borrower fails to comply with or to perform any other term, obligation, covenant or condition contained in this Note or in any of the related documents or to comply with or to perform any term, obligation, covenant or condition contained in any other agreement between Lender and Borrower.

**Default in Favor of Third Parties.** Borrower or any Grantor defaults under any loan, extension of credit, security agreement, purchase or sales agreement, or any other agreement, in favor of any other creditor or person that may materially affect any of Borrower's property or Borrower's ability to repay this Note or perform Borrower's obligations under this Note or any of the related documents.

**False Statements.** Any warranty, representation or statement made or furnished to Lender by Borrower or on Borrower's behalf under this Note or the related documents is false or misleading in any material respect, either now or at the time made or furnished or becomes false or misleading at any time thereafter.

**Insolvency.** The dissolution or termination of Borrower's existence as a going business, the insolvency of Borrower, the appointment of a receiver for any part of Borrower's property, any assignment for the benefit of creditors, any type of creditor workout, or the commencement of any proceeding under any bankruptcy or insolvency laws by or against Borrower.

**Creditor or Forfeiture Proceedings.** Commencement of foreclosure or forfeiture proceedings, whether by judicial proceeding, self-help, repossession or any other method, by any creditor of Borrower or by any governmental agency against any collateral securing the loan. This includes a garnishment of any of Borrower's accounts, including deposit accounts, with Lender. However, this Event of Default shall not apply if there is a good faith dispute by Borrower as to the validity or reasonableness of the claim which is the basis of the creditor or forfeiture proceeding and if Borrower gives Lender written notice of the creditor or forfeiture proceeding and deposits with Lender monies or a surety bond for the creditor or forfeiture proceeding, in an amount determined by Lender, in its sole discretion, as being an adequate reserve or bond for the dispute.

**Events Affecting Guarantor.** Any of the preceding events occurs with respect to any guarantor, endorser, surety, or accommodation party of any of the indebtedness or any guarantor, endorser, surety, or accommodation party dies or becomes incompetent, or revokes or disputes the validity of, or liability under, any guaranty of the indebtedness evidenced by this Note.

**Change in Ownership.** Any change in ownership of twenty-five percent (25%) or more of the common stock of Borrower.

**Adverse Change.** A material adverse change occurs in Borrower's financial condition, or Lender believes the prospect of payment or performance of this Note is impaired.

FILED DATE: 9/12/2018 12:24 PM   2018CH11483

**PROMISSORY NOTE**
**(Continued)**

Loan No: [redacted]

Page 2

**Cure Provisions.** If any default, other than a default in payment is curable and if Borrower has not been given a notice of a breach of the same provision of this Note within the preceding twelve (12) months, it may be cured if Borrower, after Lender sends written notice to Borrower demanding cure of such default: (1) cures the default within fifteen (15) days; or (2) if the cure requires more than fifteen (15) days, immediately initiates steps which Lender deems in Lender's sole discretion to be sufficient to cure the default and thereafter continues and completes all reasonable and necessary steps sufficient to produce compliance as soon as reasonably practical.

**LENDER'S RIGHTS.** Upon default, Lender may declare the entire unpaid principal balance under this Note and all accrued unpaid interest immediately due, and then Borrower will pay that amount. Under all circumstances, the Indebtedness will be repaid without relief from any Indiana or other valuation and appraisement laws.

**ATTORNEYS' FEES; EXPENSES.** Lender may hire or pay someone else to help collect this Note if Borrower does not pay. Borrower will pay Lender that amount. This includes, subject to any limits under applicable law, Lender's attorneys' fees and Lender's legal expenses, whether or not there is a lawsuit, including without limitation all attorneys' fees and legal expenses for bankruptcy proceedings (including efforts to modify or vacate any automatic stay or injunction), and appeals. If not prohibited by applicable law, Borrower also will pay any court costs, in addition to all other sums provided by law.

**JURY WAIVER.** Lender and Borrower hereby waive the right to any jury trial in any action, proceeding, or counterclaim brought by either Lender or Borrower against the other.

**GOVERNING LAW.** This Note will be governed by federal law applicable to Lender and, to the extent not preempted by federal law, the laws of the State of Indiana without regard to its conflicts of law provisions. This Note has been accepted by Lender in the State of Indiana.

**RIGHT OF SETOFF.** To the extent permitted by applicable law, Lender reserves a right of setoff in all Borrower's accounts with Lender (whether checking, savings, or some other account). This includes all accounts Borrower holds jointly with someone else and all accounts Borrower may open in the future. However, this does not include any IRA or Keogh accounts, or any trust accounts for which setoff would be prohibited by law. Borrower authorizes Lender, to the extent permitted by applicable law, to charge or setoff all sums owing on the indebtedness against any and all such accounts, and, at Lender's option, to administratively freeze all such accounts to allow Lender to protect Lender's charge and setoff rights provided in this paragraph.

**ADDITIONAL ASSURANCE.** Borrower agrees to make, execute and deliver to Lender such promissory note, mortgages, deed of trust, security agreements, assignments, financing statements, instruments, documents and other agreements as Lender or its attorneys may reasonably request to evidence and secure the Loans and to perfect all Security Interests.

**BUSINESS LOAN AGREEMENT.** This Promissory Note is governed by a Business Loan Agreement from Borrower to Lender.

**COLLATERAL.** Borrower acknowledges this Note is secured by any and all other mortgages, security agreements, assignments, loan agreements, pledge agreements and any other document or instrument evidencing a security interest or other lien in favor of Lender and executed and delivered by Borrower or any third party as security for payment of this Note and/or all indebtedness of Borrower to Lender, whether contemporaneous with the execution of this Note or at any other time. Collateral securing other obligations of Borrower to Lender may also secure this Note.

**FINAL AGREEMENT.** This Note and the related documents set forth the entire agreement between the parties regarding the transactions contemplated hereby and supercede all prior agreements, commitments, discussions, representations and understandings, whether written or oral, and any and all contemporaneous oral agreements, commitments, discussions, representations and understandings between the parties relating to the subject matter hereof.

**SHARING INFORMATION.** Borrower hereby authorizes Lender to share all credit and financial information relating to Borrower with Lender's parent company and with any subsidiary or affiliate of Lender or of Lender's parent company.

**SUCCESSOR INTERESTS.** The terms of this Note shall be binding upon Borrower, and upon Borrower's heirs, personal representatives, successors and assigns, and shall inure to the benefit of Lender and its successors and assigns.

**GENERAL PROVISIONS.** If any part of this Note cannot be enforced, this fact will not affect the rest of the Note. Lender may delay or forgo enforcing any of its rights or remedies under this Note without losing them. Each Borrower understands and agrees that, with or without notice to Borrower, Lender may with respect to any other Borrower (a) make one or more additional secured or unsecured loans or otherwise extend additional credit; (b) alter, compromise, renew, extend, accelerate, or otherwise change one or more times the time for payment or other terms of any indebtedness, including increases and decreases of the rate of interest on the indebtedness; (c) exchange, enforce, waive, subordinate, fail or decide not to perfect, and release any security, with or without the substitution of new collateral; (d) apply such security and direct the order or manner of sale thereof, including without limitation, any non-judicial sale permitted by the terms of the controlling security agreements, as Lender in its discretion may determine; (e) release, substitute, agree not to sue, or deal with any one or more of Borrower's sureties, endorsers, or other guarantors on any terms or in any manner Lender may choose; and (f) determine how, when and what application of payments and credits shall be made on any other indebtedness owing by such other Borrower. Borrower and any other person who signs, guarantees or endorses this Note, to the extent allowed by law, waive presentment, demand for payment, and notice of dishonor. Upon any change in the terms of this Note, and unless otherwise expressly stated in writing, no party who signs this Note, whether as maker, guarantor, accommodation maker or endorser, shall be released from liability. All such parties agree that Lender may renew or extend (repeatedly and for any length of time) this loan or release any party or guarantor or collateral; or impair, fail to realize upon or perfect Lender's security interest in the collateral; and take any other action deemed necessary by Lender without the consent of or notice to anyone. All such parties also agree that Lender may modify this loan without the consent of or notice to anyone other than the party with whom the modification is made. The obligations under this Note are joint and several.

**ILLINOIS INSURANCE NOTICE.** Unless Borrower provides Lender with evidence of the insurance coverage required by Borrower's agreement with Lender, Lender may purchase insurance at Borrower's expense to protect Lender's interests in the collateral. This insurance may, but need not, protect Borrower's interests. The coverage that Lender purchases may not pay any claim that Borrower makes or any claim that is made against Borrower in connection with the collateral. Borrower may later cancel any insurance purchased by Lender, but only after providing Lender with evidence that Borrower has obtained insurance as required by their agreement. If Lender purchases insurance for the collateral, Borrower will be responsible for the costs of that insurance, including interest and any other charges Lender may impose in connection with the placement of the insurance, until the effective date of the cancellation or expiration of the insurance. The costs of the insurance may be added to Borrower's total outstanding balance or obligation. The costs of the insurance may be more than the cost of insurance Borrower may be able to obtain on Borrower's own.

Loan No: ▓▓▓▓▓▓

## PROMISSORY NOTE
## (Continued)

Page 3

FILED DATE: 9/12/2018 12:24 PM   2018CH11483

PRIOR TO SIGNING THIS NOTE, EACH BORROWER READ AND UNDERSTOOD ALL THE PROVISIONS OF THIS NOTE. EACH BORROWER AGREES TO THE TERMS OF THE NOTE.

BORROWER ACKNOWLEDGES RECEIPT OF A COMPLETED COPY OF THIS PROMISSORY NOTE.

BORROWER:

PLATINUM PROPERTY HOLDINGS INCORPORATED

By: _____
    Piotr Palider, Sole Officer, Director, and Shareholder
    of Platinum Property Holdings Incorporated

X _____
    Piotr Palider, Individually

LENDER:

FIRST MERCHANTS BANK, N.A.

X _____
    Authorized Signer

LaserPro, Ver. 14.3.10.003  Copr. C+H USA Corporation 1997, 2014.  All Rights Reserved.  - IL  C:\LaserPro\CMC\FIRLL\206.FC  TR-30468  PR-86

# MOTION FOR RELIEF FROM STAY

## <u>EXHIBIT B</u>

FILED DATE: 9/12/2018 12:24 PM   2018CH11483

# Illinois Anti-Predatory Lending Database Program

## Certificate of Exemption



Doc#:   1428104034 Fee: $66.00
RHSP Fee:$9.00 RPRF Fee: $1.00
Karen A. Yarbrough
Cook County Recorder of Deeds
Date: 10/08/2014 09:09 AM Pg: 1 of 15

**Report Mortgage Fraud**
**800-532-8785**

---

The property identified as:      **PIN:** 16-09-305-002-0000

**Address:**
**Street:**        5235 W Lake St.

**Street line 2:**

**City:** Chicago              **State:** IL              **ZIP Code:** 60644

**Lender:** First Merchants Bank, N.A.

**Borrower:** Platinum Property Holdings, L.L.C.

**Loan / Mortgage Amount:** $1,525,000.00

This property is located within the program area and is exempt from the requirements of 765 ILCS 77/70 et seq. because it is commercial property.

## Box 400-CTCC

S
P
S
SC
INT

**Certificate number:** 62EEE021-2CDA-49B6-93DD-C71B16184B5A      **Execution date:** 09/11/201...

FILED DATE: 9/12/2018 12:24 PM   2018CH11483

RECORDATION REQUESTED BY:
    First Merchants Bank, N.A.
    Dyer Branch
    Woudeland Professional
    Center
    1100 E Joliet Street
    Dyer, IN  46311

WHEN RECORDED MAIL TO:
    First Merchants Bank
    ATTN: Loan Operations -
    Documents
    P. O. Box 7011
    Muncie, IN  47308

SEND TAX NOTICES TO:
    First Merchants Bank
    ATTN:  Loan Operations -
    Escrows
    P.O. Box 7011
    Muncie, IN  47308                                          **FOR RECORDER'S USE ONLY**

This Mortgage prepared by:
    Misty King, Documentation Specialist I
    First Merchants Bank, N.A.
    Woudeland Professional Center
    Dyer, IN 46311

## MORTGAGE

**MAXIMUM LIEN.  At no time shall the principal amount of indebtedness secured by the Mortgage, not including sums advanced to protect the security of the Mortgage, exceed $1,525,000.00.**

**THIS MORTGAGE dated September 17, 2014, is made and executed between Platinum Property Holdings, L.L.C. AKA Platinum Property Holdings Incorporated, whose address is 8141 W 84th Pl, Justice, IL 60458-2262 (referred to below as "Grantor") and First Merchants Bank, N.A. , whose address is Woudeland Professional Center, 1100 E Joliet Street, Dyer, IN  46311 (referred to below as "Lender").**

**GRANT OF MORTGAGE.  For valuable consideration, Grantor** mortgages, warrants, and conveys to Lender all of Grantor's right, title, and interest in and to the following described real property, together with all existing or subsequently erected or affixed buildings, improvements and fixtures; all easements, rights of way, and appurtenances; all water, water rights, watercourses and ditch rights (including stock in utilities with ditch or irrigation rights); and all other rights, royalties, and profits relating to the real property, including without limitation all minerals, oil, gas, geothermal and similar matters, (the **"Real Property"**) located in **Cook** County, State of **Illinois**:

> LOTS 1, 2 AND 3 (EXCEPT THE WESTERLY 16.06 FEET OF SAID LOT 3) IN BLOCK 1 IN THE RESUBDIVISION OF BLOCK 1 AND LOT 1 TO 11 IN BLOCK 2 OF JEROME E. BATES' SUBDIVISION OF THAT PART OF THE WEST ½ OF THE EAST ½ OF THE NORTHEAST ¼ OF THE SOUTHWEST ¼ OF SECTION 9, TOWNSHIP 39 NORTH, RANGE 13, EAST OF THE THIRD PRINCIPAL MERIDIAN, IN COOK COUNTY, ILLINOIS.

The Real Property or its address is commonly known as  5235 W Lake St, Chicago, IL  60644.  The Real

FILED DATE: 9/12/2018 12:24 PM   2018CH11483

## MORGTAGE
### (Continued)

Property tax identification number is 16-09-305-002-0000.

**CROSS-COLLATERALIZATION.** In addition to the Note, this Mortgage secures all obligations, debts and liabilities, plus interest thereon, of either Grantor or Borrower to Lender, or any one or more of them, as well as all claims by Lender against Borrower and Grantor or any one or more of them, whether now existing or hereafter arising, whether related or unrelated to the purpose of the Note, whether voluntary or otherwise, whether due or not due, direct or indirect, determined or undetermined, absolute or contingent, liquidated or unliquidated, whether Borrower or Grantor may be liable individually or jointly with others, whether obligated as guarantor, surety, accommodation party or otherwise, and whether recovery upon such amounts may be or hereafter may become barred by any statute of limitations, and whether the obligation to repay such amounts may be or hereafter may become otherwise unenforceable.

Grantor presently assigns to Lender all of Grantor's right, title, and interest in and to all present and future leases of the Property and all Rents from the Property. In addition, Grantor grants to Lender a Uniform Commercial Code security interest in the Personal Property and Rents.

**FUTURE ADVANCES.** In addition to the Note, this Mortgage secures all future advances made by Lender to Borrower or Grantor whether or not the advances are made pursuant to a commitment. Specifically, without limitation, this Mortgage secures, in addition to the amounts specified in the Note, all future amounts Lender in its discretion may loan to Borrower or Grantor, together with all interest thereon.

**THIS MORTGAGE, INCLUDING THE ASSIGNMENT OF RENTS AND THE SECURITY INTEREST IN THE RENTS AND PERSONAL PROPERTY, IS GIVEN TO SECURE (A) PAYMENT OF THE INDEBTEDNESS AND (B) PERFORMANCE OF ANY AND ALL OBLIGATIONS UNDER THE NOTE, THE RELATED DOCUMENTS, AND THIS MORTGAGE. THIS MORTGAGE IS GIVEN AND ACCEPTED ON THE FOLLOWING TERMS:**

**GRANTOR'S WAIVERS.** Grantor waives all rights or defenses arising by reason of any "one action" or "anti-deficiency" law, or any other law which may prevent Lender from bringing any action against Grantor, including a claim for deficiency to the extent Lender is otherwise entitled to a claim for deficiency, before or after Lender's commencement or completion of any foreclosure action, either judicially or by exercise of a power of sale.

**GRANTOR'S REPRESENTATIONS AND WARRANTIES.** Grantor warrants that: (a) this Mortgage is executed at Borrower's request and not at the request of Lender; (b) Grantor has the full power, right, and authority to enter into this Mortgage and to hypothecate the Property; (c) the provisions of this Mortgage do not conflict with, or result in a default under any agreement or other instrument binding upon Grantor and do not result in a violation of any law, regulation, court decree or order applicable to Grantor; (d) Grantor has established adequate means of obtaining from Borrower on a continuing basis information about Borrower's financial condition; and (e) Lender has made no representation to Grantor about Borrower (including without limitation the creditworthiness of Borrower).

**PAYMENT AND PERFORMANCE.** Except as otherwise provided in this Mortgage, Borrower and Grantor shall pay to Lender all Indebtedness secured by this Mortgage as it becomes due, and Borrower and Grantor shall strictly perform all Borrower's and Grantor's obligations under this Mortgage.

**POSSESSION AND MAINTENANCE OF THE PROPERTY.** Borrower and Grantor agree that Borrower's and Grantor's possession and use of the Property shall be governed by the following provisions:

**Possession and Use.** Until the occurrence of an Event of Default, Grantor may (1) remain in possession and control of the Property; (2) use, operate or manage the Property; and (3) collect the Rents from the Property.

**Duty to Maintain.** Grantor shall maintain the Property in tenantable condition and promptly perform all repairs, replacements, and maintenance necessary to preserve its value.

**Compliance With Environmental Laws.** Grantor represents and warrants to Lender that: (1) During the period of Grantor's ownership of the Property, there has been no use, generation, manufacture, storage, treatment, disposal, release or threatened release of any Hazardous Substance by any person on, under,

FILED DATE: 9/12/2018 12:24 PM   2018CH11483

# MORTGAGE
## (Continued)

about or from the Property; (2) Grantor has no knowledge of, or reason to believe that there has been, except as previously disclosed to and acknowledged by Lender in writing, (a) any breach or violation of any Environmental Laws, (b) any use, generation, manufacture, storage, treatment, disposal, release or threatened release of any Hazardous Substance on, under, about or from the Property by any prior owners or occupants of the Property, or (c) any actual or threatened litigation or claims of any kind by any person relating to such matters; and (3) Except as previously disclosed to and acknowledged by Lender in writing, (a) neither Grantor nor any tenant, contractor, agent or other authorized user of the Property shall use, generate, manufacture, store, treat, dispose of or release any Hazardous Substance on, under, about or from the Property; and (b) any such activity shall be conducted in compliance with all applicable federal, state, and local laws, regulations and ordinances, including without limitation all Environmental Laws. Grantor authorizes Lender and its agents to enter upon the Property to make such inspections and tests, at Grantor's expense, as Lender may deem appropriate to determine compliance of the Property with this section of the Mortgage. Any inspections or tests made by Lender shall be for Lender's purposes only and shall not be construed to create any responsibility or liability on the part of Lender to Grantor or to any other person. The representations and warranties contained herein are based on Grantor's due diligence in investigating the Property for Hazardous Substances. Grantor hereby (1) releases and waives any future claims against Lender for indemnity or contribution in the event Grantor becomes liable for cleanup or other costs under any such laws; and (2) agrees to indemnify, defend, and hold harmless Lender against any and all claims, losses, liabilities, damages, penalties, and expenses which Lender may directly or indirectly sustain or suffer resulting from a breach of this section of the Mortgage or as a consequence of any use, generation, manufacture, storage, disposal, release or threatened release occurring prior to Grantor's ownership or interest in the Property, whether or not the same was or should have been known to Grantor. The provisions of this section of the Mortgage, including the obligation to indemnify and defend, shall survive the payment of the Indebtedness and the satisfaction and reconveyance of the lien of this Mortgage and shall not be affected by Lender's acquisition of any interest in the Property, whether by foreclosure or otherwise.

**Nuisance, Waste.** Grantor shall not cause, conduct or permit any nuisance nor commit, permit, or suffer any stripping of or waste on or to the Property or any portion of the Property. Without limiting the generality of the foregoing, Grantor will not remove, or grant to any other party the right to remove, any timber, minerals (including oil and gas), coal, clay, scoria, soil, gravel or rock products without Lender's prior written consent.

**Removal of Improvements.** Grantor shall not demolish or remove any Improvements from the Real Property without Lender's prior written consent. As a condition to the removal of any Improvements, Lender may require Grantor to make arrangements satisfactory to Lender to replace such Improvements with Improvements of at least equal value.

**Lender's Right to Enter.** Lender and Lender's agents and representatives may enter upon the Real Property at all reasonable times to attend to Lender's interests and to inspect the Real Property for purposes of Grantor's compliance with the terms and conditions of this Mortgage.

**Compliance with Governmental Requirements.** Grantor shall promptly comply with all laws, ordinances, and regulations, now or hereafter in effect, of all governmental authorities applicable to the use or occupancy of the Property, including without limitation, the Americans With Disabilities Act. Grantor may contest in good faith any such law, ordinance, or regulation and withhold compliance during any proceeding, including appropriate appeals, so long as Grantor has notified Lender in writing prior to doing so and so long as, in Lender's sole opinion, Lender's interests in the Property are not jeopardized. Lender may require Grantor to post adequate security or a surety bond, reasonably satisfactory to Lender, to protect Lender's interest.

**Duty to Protect.** Grantor agrees neither to abandon or leave unattended the Property. Grantor shall do all other acts, in addition to those acts set forth above in this section, which from the character and use of the Property are reasonably necessary to protect and preserve the Property.

**DUE ON SALE - CONSENT BY LENDER.** Lender may, at Lender's option, declare immediately due and payable

FILED DATE: 9/12/2018 12:24 PM   2018CH11483

## MORGAGE
### (Continued)

all sums secured by this Mortgage upon the sale or transfer, without Lender's prior written consent, of all or any part of the Real Property, or any interest in the Real Property. A "sale or transfer" means the conveyance of Real Property or any right, title or interest in the Real Property; whether legal, beneficial or equitable; whether voluntary or involuntary; whether by outright sale, deed, installment sale contract, land contract, contract for deed, leasehold interest with a term greater than three (3) years, lease-option contract, or by sale, assignment, or transfer of any beneficial interest in or to any land trust holding title to the Real Property, or by any other method of conveyance of an interest in the Real Property. If any Grantor is a corporation, partnership or limited liability company, transfer also includes any change in ownership of more than twenty-five percent (25%) of the voting stock, partnership interests or limited liability company interests, as the case may be, of such Grantor. However, this option shall not be exercised by Lender if such exercise is prohibited by federal law or by Illinois law.

**TAXES AND LIENS.** The following provisions relating to the taxes and liens on the Property are part of this Mortgage:

**Payment.** Grantor shall pay when due (and in all events prior to delinquency) all taxes, payroll taxes, special taxes, assessments, water charges and sewer service charges levied against or on account of the Property, and shall pay when due all claims for work done on or for services rendered or material furnished to the Property. Grantor shall maintain the Property free of any liens having priority over or equal to the interest of Lender under this Mortgage, except for those liens specifically agreed to in writing by Lender, and except for the lien of taxes and assessments not due as further specified in the Right to Contest paragraph.

**Right to Contest.** Grantor may withhold payment of any tax, assessment, or claim in connection with a good faith dispute over the obligation to pay, so long as Lender's interest in the Property is not jeopardized. If a lien arises or is filed as a result of nonpayment, Grantor shall within fifteen (15) days after the lien arises or, if a lien is filed, within fifteen (15) days after Grantor has notice of the filing, secure the discharge of the lien, or if requested by Lender, deposit with Lender cash or a sufficient corporate surety bond or other security satisfactory to Lender in an amount sufficient to discharge the lien plus any costs and attorneys' fees, or other charges that could accrue as a result of a foreclosure or sale under the lien. In any contest, Grantor shall defend itself and Lender and shall satisfy any adverse judgment before enforcement against the Property. Grantor shall name Lender as an additional obligee under any surety bond furnished in the contest proceedings.

**Evidence of Payment.** Grantor shall upon demand furnish to Lender satisfactory evidence of payment of the taxes or assessments and shall authorize the appropriate governmental official to deliver to Lender at any time a written statement of the taxes and assessments against the Property.

**Notice of Construction.** Grantor shall notify Lender at least fifteen (15) days before any work is commenced, any services are furnished, or any materials are supplied to the Property, if any mechanic's lien, materialmen's lien, or other lien could be asserted on account of the work, services, or materials. Grantor will upon request of Lender furnish to Lender advance assurances satisfactory to Lender that Grantor can and will pay the cost of such improvements.

**PROPERTY DAMAGE INSURANCE.** The following provisions relating to insuring the Property are a part of this Mortgage:

**Maintenance of Insurance.** Grantor shall procure and maintain policies of fire insurance with standard extended coverage endorsements on a replacement basis for the full insurable value covering all Improvements on the Real Property in an amount sufficient to avoid application of any coinsurance clause, and with a standard mortgagee clause in favor of Lender. Grantor shall also procure and maintain comprehensive general liability insurance in such coverage amounts as Lender may request with Lender being named as additional insureds in such liability insurance policies. Additionally, Grantor shall maintain such other insurance, including but not limited to hazard, business interruption and boiler insurance as Lender may require. Policies shall be written by such insurance companies and in such form as may be reasonably acceptable to Lender. Grantor shall deliver to Lender certificates of coverage from each insurer

FILED DATE: 9/12/2018 12:24 PM   2018CH11483

## MORTGAGE
### (Continued)

containing a stipulation that coverage will not be cancelled or diminished without a minimum of ten (10) days' prior written notice to Lender and not containing any disclaimer of the insurer's liability for failure to give such notice. Each insurance policy also shall include an endorsement providing that coverage in favor of Lender will not be impaired in any way by any act, omission or default of Grantor or any other person. Should the Real Property be located in an area designated by the Administrator of the Federal Emergency Management Agency as a special flood hazard area, Grantor agrees to obtain and maintain Federal Flood Insurance, if available, within 45 days after notice is given by Lender that the Property is located in a special flood hazard area, for the full unpaid principal balance of the loan and any prior liens on the property securing the loan, up to the maximum policy limits set under the National Flood Insurance Program, or as otherwise required by Lender, and to maintain such insurance for the term of the loan.

**Application of Proceeds.** Grantor shall promptly notify Lender of any loss or damage to the Property. Lender may make proof of loss if Grantor fails to do so within fifteen (15) days of the casualty. Whether or not Lender's security is impaired, Lender may, at Lender's election, receive and retain the proceeds of any insurance and apply the proceeds to the reduction of the Indebtedness, payment of any lien affecting the Property, or the restoration and repair of the Property. If Lender elects to apply the proceeds to restoration and repair, Grantor shall repair or replace the damaged or destroyed Improvements in a manner satisfactory to Lender. Lender shall, upon satisfactory proof of such expenditure, pay or reimburse Grantor from the proceeds for the reasonable cost of repair or restoration if Grantor is not in default under this Mortgage. Any proceeds which have not been disbursed within 180 days after their receipt and which Lender has not committed to the repair or restoration of the Property shall be used first to pay any amount owing to Lender under this Mortgage, then to pay accrued interest, and the remainder, if any, shall be applied to the principal balance of the Indebtedness. If Lender holds any proceeds after payment in full of the Indebtedness, such proceeds shall be paid to Grantor as Grantor's interests may appear.

**Grantor's Report on Insurance.** Upon request of Lender, however not more than once a year, Grantor shall furnish to Lender a report on each existing policy of insurance showing: (1) the name of the insurer; (2) the risks insured; (3) the amount of the policy; (4) the property insured, the then current replacement value of such property, and the manner of determining that value; and (5) the expiration date of the policy. Grantor shall, upon request of Lender, have an independent appraiser satisfactory to Lender determine the cash value replacement cost of the Property.

**LENDER'S EXPENDITURES.** If any action or proceeding is commenced that would materially affect Lender's interest in the Property or if Grantor fails to comply with any provision of this Mortgage or any Related Documents, including but not limited to Grantor's failure to discharge or pay when due any amounts Grantor is required to discharge or pay under this Mortgage or any Related Documents, Lender on Grantor's behalf may (but shall not be obligated to) take any action that Lender deems appropriate, including but not limited to discharging or paying all taxes, liens, security interests, encumbrances and other claims, at any time levied or placed on the Property and paying all costs for insuring, maintaining and preserving the Property. All such expenditures incurred or paid by Lender for such purposes will then bear interest at the rate charged under the Note from the date incurred or paid by Lender to the date of repayment by Grantor. All such expenses will become a part of the Indebtedness and, at Lender's option, will (A) be payable on demand; (B) be added to the balance of the Note and be apportioned among and be payable with any installment payments to become due during either (1) the term of any applicable insurance policy; or (2) the remaining term of the Note; or (C) be treated as a balloon payment which will be due and payable at the Note's maturity. The Mortgage also will secure payment of these amounts. Such right shall be in addition to all other rights and remedies to which Lender may be entitled upon Default.

**WARRANTY; DEFENSE OF TITLE.** The following provisions relating to ownership of the Property are a part of this Mortgage:

**Title.** Grantor warrants that: (a) Grantor holds good and marketable title of record to the Property in fee simple, free and clear of all liens and encumbrances other than those set forth in the Real Property description or in any title insurance policy, title report, or final title opinion issued in favor of, and accepted by, Lender in connection with this Mortgage, and (b) Grantor has the full right, power, and authority to

# MORGAGE
## (Continued)

FILED DATE: 9/12/2018 12:24 PM   2018CH11483

execute and deliver this Mortgage to Lender.

**Defense of Title.**  Subject to the exception in the paragraph above, Grantor warrants and will forever defend the title to the Property against the lawful claims of all persons.  In the event any action or proceeding is commenced that questions Grantor's title or the interest of Lender under this Mortgage, Grantor shall defend the action at Grantor's expense.  Grantor may be the nominal party in such proceeding, but Lender shall be entitled to participate in the proceeding and to be represented in the proceeding by counsel of Lender's own choice, and Grantor will deliver, or cause to be delivered, to Lender such instruments as Lender may request from time to time to permit such participation.

**Compliance With Laws.**  Grantor warrants that the Property and Grantor's use of the Property complies with all existing applicable laws, ordinances, and regulations of governmental authorities.

**Survival of Representations and Warranties.**  All representations, warranties, and agreements made by Grantor in this Mortgage shall survive the execution and delivery of this Mortgage, shall be continuing in nature, and shall remain in full force and effect until such time as Borrower's Indebtedness shall be paid in full.

**CONDEMNATION.**  The following provisions relating to condemnation proceedings are a part of this Mortgage:

**Proceedings.**  If any proceeding in condemnation is filed, Grantor shall promptly notify Lender in writing, and Grantor shall promptly take such steps as may be necessary to defend the action and obtain the award.  Grantor may be the nominal party in such proceeding, but Lender shall be entitled to participate in the proceeding and to be represented in the proceeding by counsel of its own choice, and Grantor will deliver or cause to be delivered to Lender such instruments and documentation as may be requested by Lender from time to time to permit such participation.

**Application of Net Proceeds.**  If all or any part of the Property is condemned by eminent domain proceedings or by any proceeding or purchase in lieu of condemnation, Lender may at its election require that all or any portion of the net proceeds of the award be applied to the Indebtedness or the repair or restoration of the Property.  The net proceeds of the award shall mean the award after payment of all reasonable costs, expenses, and attorneys' fees incurred by Lender in connection with the condemnation.

**IMPOSITION OF TAXES, FEES AND CHARGES BY GOVERNMENTAL AUTHORITIES.**  The following provisions relating to governmental taxes, fees and charges are a part of this Mortgage:

**Current Taxes, Fees and Charges.**  Upon request by Lender, Grantor shall execute such documents in addition to this Mortgage and take whatever other action is requested by Lender to perfect and continue Lender's lien on the Real Property.  Grantor shall reimburse Lender for all taxes, as described below, together with all expenses incurred in recording, perfecting or continuing this Mortgage, including without limitation all taxes, fees, documentary stamps, and other charges for recording or registering this Mortgage.

**Taxes.**  The following shall constitute taxes to which this section applies:  (1)  a specific tax upon this type of Mortgage or upon all or any part of the  Indebtedness secured by this Mortgage;  (2)  a specific tax on Borrower which Borrower is authorized or required to deduct from payments on the Indebtedness secured by this type of Mortgage;  (3)  a tax on this type of Mortgage chargeable against the Lender or the holder of the Note; and  (4)  a specific tax on all or any portion of the Indebtedness or on payments of principal and interest made by Borrower.

**Subsequent Taxes.**  If any tax to which this section applies is enacted subsequent to the date of this Mortgage, this event shall have the same effect as an Event of Default, and Lender may exercise any or all of its available remedies for an Event of Default as provided below unless Grantor either  (1)  pays the tax before it becomes delinquent, or  (2)  contests the tax as provided above in the Taxes and Liens section and deposits with Lender cash or a sufficient corporate surety bond or other security satisfactory to Lender.

**SECURITY AGREEMENT; FINANCING STATEMENTS.**  The following provisions relating to this Mortgage as a security agreement are a part of this Mortgage:

FILED DATE: 9/12/2018 12:24 PM    2018CH11483

## MORTGAGE
### (Continued)

**Security Agreement.** This instrument shall constitute a Security Agreement to the extent any of the Property constitutes fixtures, and Lender shall have all of the rights of a secured party under the Uniform Commercial Code as amended from time to time.

**Security Interest.** Upon request by Lender, Grantor shall take whatever action is requested by Lender to perfect and continue Lender's security interest in the Rents and Personal Property. In addition to recording this Mortgage in the real property records, Lender may, at any time and without further authorization from Grantor, file executed counterparts, copies or reproductions of this Mortgage as a financing statement. Grantor shall reimburse Lender for all expenses incurred in perfecting or continuing this security interest. Upon default, Grantor shall not remove, sever or detach the Personal Property from the Property. Upon default, Grantor shall assemble any Personal Property not affixed to the Property in a manner and at a place reasonably convenient to Grantor and Lender and make it available to Lender within three (3) days after receipt of written demand from Lender to the extent permitted by applicable law.

**Addresses.** The mailing addresses of Grantor (debtor) and Lender (secured party) from which information concerning the security interest granted by this Mortgage may be obtained (each as required by the Uniform Commercial Code) are as stated on the first page of this Mortgage.

**FURTHER ASSURANCES; ATTORNEY-IN-FACT.** The following provisions relating to further assurances and attorney-in-fact are a part of this Mortgage:

**Further Assurances.** At any time, and from time to time, upon request of Lender, Grantor will make, execute and deliver, or will cause to be made, executed or delivered, to Lender or to Lender's designee, and when requested by Lender, cause to be filed, recorded, refiled, or rerecorded, as the case may be, at such times and in such offices and places as Lender may deem appropriate, any and all such mortgages, deeds of trust, security deeds, security agreements, financing statements, continuation statements, instruments of further assurance, certificates, and other documents as may, in the sole opinion of Lender, be necessary or desirable in order to effectuate, complete, perfect, continue, or preserve (1) Borrower's and Grantor's obligations under the Note, this Mortgage, and the Related Documents, and (2) the liens and security interests created by this Mortgage as first and prior liens on the Property, whether now owned or hereafter acquired by Grantor. Unless prohibited by law or Lender agrees to the contrary in writing, Grantor shall reimburse Lender for all costs and expenses incurred in connection with the matters referred to in this paragraph.

**Attorney-in-Fact.** If Grantor fails to do any of the things referred to in the preceding paragraph, Lender may do so for and in the name of Grantor and at Grantor's expense. For such purposes, Grantor hereby irrevocably appoints Lender as Grantor's attorney-in-fact for the purpose of making, executing, delivering, filing, recording, and doing all other things as may be necessary or desirable, in Lender's sole opinion, to accomplish the matters referred to in the preceding paragraph.

**FULL PERFORMANCE.** If Borrower and Grantor pay all the Indebtedness, including without limitation all future advances, when due, and Grantor otherwise performs all the obligations imposed upon Grantor under this Mortgage, Lender shall execute and deliver to Grantor a suitable satisfaction of this Mortgage and suitable statements of termination of any financing statement on file evidencing Lender's security interest in the Rents and the Personal Property. Grantor will pay, if permitted by applicable law, any reasonable termination fee as determined by Lender from time to time.

**REINSTATEMENT OF SECURITY INTEREST.** If payment is made by Borrower, whether voluntarily or otherwise, or by guarantor or by any third party, on the Indebtedness and thereafter Lender is forced to remit the amount of that payment (A) to Borrower's trustee in bankruptcy or to any similar person under any federal or state bankruptcy law or law for the relief of debtors, (B) by reason of any judgment, decree or order of any court or administrative body having jurisdiction over Lender or any of Lender's property, or (C) by reason of any settlement or compromise of any claim made by Lender with any claimant (including without limitation Borrower), the Indebtedness shall be considered unpaid for the purpose of enforcement of this Mortgage and this Mortgage shall continue to be effective or shall be reinstated, as the case may be, notwithstanding any cancellation of this Mortgage or of any note or other instrument or agreement evidencing

FILED DATE: 9/12/2018 12:24 PM   2018CH11483

## MORGAGE
### (Continued)

the Indebtedness and the Property will continue to secure the amount repaid or recovered to the same extent as if that amount never had been originally received by Lender, and Grantor shall be bound by any judgment, decree, order, settlement or compromise relating to the Indebtedness or to this Mortgage.

**EVENTS OF DEFAULT.** Each of the following, at Lender's option, shall constitute an Event of Default under this Mortgage:

**Payment Default.** Borrower fails to make any payment when due under the Indebtedness.

**Default on Other Payments.** Failure of Grantor within the time required by this Mortgage to make any payment for taxes or insurance, or any other payment necessary to prevent filing of or to effect discharge of any lien.

**Other Defaults.** Borrower or Grantor fails to comply with or to perform any other term, obligation, covenant or condition contained in this Mortgage or in any of the Related Documents or to comply with or to perform any term, obligation, covenant or condition contained in any other agreement between Lender and Borrower or Grantor.

**Default in Favor of Third Parties.** Should Borrower or any Grantor default under any loan, extension of credit, security agreement, purchase or sales agreement, or any other agreement, in favor of any other creditor or person that may materially affect any of Borrower's or any Grantor's property or Borrower's ability to repay the Indebtedness or Borrower's or Grantor's ability to perform their respective obligations under this Mortgage or any of the Related Documents.

**False Statements.** Any warranty, representation or statement made or furnished to Lender by Borrower or Grantor or on Borrower's or Grantor's behalf under this Mortgage or the Related Documents is false or misleading in any material respect, either now or at the time made or furnished or becomes false or misleading at any time thereafter.

**Defective Collateralization.** This Mortgage or any of the Related Documents ceases to be in full force and effect (including failure of any collateral document to create a valid and perfected security interest or lien) at any time and for any reason.

**Insolvency.** The dissolution or termination of Borrower's or Grantor's existence as a going business, the insolvency of Borrower or Grantor, the appointment of a receiver for any part of Borrower's or Grantor's property, any assignment for the benefit of creditors, any type of creditor workout, or the commencement of any proceeding under any bankruptcy or insolvency laws by or against Borrower or Grantor.

**Creditor or Forfeiture Proceedings.** Commencement of foreclosure or forfeiture proceedings, whether by judicial proceeding, self-help, repossession or any other method, by any creditor of Borrower or Grantor or by any governmental agency against any property securing the Indebtedness. This includes a garnishment of any of Borrower's or Grantor's accounts, including deposit accounts, with Lender. However, this Event of Default shall not apply if there is a good faith dispute by Borrower or Grantor as to the validity or reasonableness of the claim which is the basis of the creditor or forfeiture proceeding and if Borrower or Grantor gives Lender written notice of the creditor or forfeiture proceeding and deposits with Lender monies or a surety bond for the creditor or forfeiture proceeding, in an amount determined by Lender, in its sole discretion, as being an adequate reserve or bond for the dispute.

**Breach of Other Agreement.** Any breach by Borrower or Grantor under the terms of any other agreement between Borrower or Grantor and Lender that is not remedied within any grace period provided therein, including without limitation any agreement concerning any indebtedness or other obligation of Borrower or Grantor to Lender, whether existing now or later.

**Events Affecting Guarantor.** Any of the preceding events occurs with respect to any guarantor, endorser, surety, or accommodation party of any of the Indebtedness or any guarantor, endorser, surety, or accommodation party dies or becomes incompetent, or revokes or disputes the validity of, or liability under, any Guaranty of the Indebtedness.

**Adverse Change.** A material adverse change occurs in Grantor's financial condition, or Lender believes the

FILED DATE: 9/12/2018 12:24 PM   2018CH11483

**MORTGAGE**
**(Continued)**

prospect of payment or performance of the Indebtedness is impaired.

**Right to Cure.** If any default, other than a default in payment is curable and if Grantor has not been given a notice of a breach of the same provision of this Mortgage within the preceding twelve (12) months, it may be cured if Grantor, after Lender sends written notice to Borrower demanding cure of such default: (1) cures the default within fifteen (15) days; or (2) if the cure requires more than fifteen (15) days, immediately initiates steps which Lender deems in Lender's sole discretion to be sufficient to cure the default and thereafter continues and completes all reasonable and necessary steps sufficient to produce compliance as soon as reasonably practical.

**RIGHTS AND REMEDIES ON DEFAULT.** Upon the occurrence of an Event of Default and at any time thereafter, Lender, at Lender's option, may exercise any one or more of the following rights and remedies, in addition to any other rights or remedies provided by law:

**Accelerate Indebtedness.** Lender shall have the right at its option without notice to Borrower or Grantor to declare the entire Indebtedness immediately due and payable, including any prepayment penalty that Borrower would be required to pay.

**UCC Remedies.** With respect to all or any part of the Personal Property, Lender shall have all the rights and remedies of a secured party under the Uniform Commercial Code.

**Collect Rents.** Lender shall have the right, without notice to Borrower or Grantor, to take possession of the Property and collect the Rents, including amounts past due and unpaid, and apply the net proceeds, over and above Lender's costs, against the Indebtedness. In furtherance of this right, Lender may require any tenant or other user of the Property to make payments of rent or use fees directly to Lender. If the Rents are collected by Lender, then Grantor irrevocably designates Lender as Grantor's attorney-in-fact to endorse instruments received in payment thereof in the name of Grantor and to negotiate the same and collect the proceeds. Payments by tenants or other users to Lender in response to Lender's demand shall satisfy the obligations for which the payments are made, whether or not any proper grounds for the demand existed. Lender may exercise its rights under this subparagraph either in person, by agent, or through a receiver.

**Mortgagee in Possession.** Lender shall have the right to be placed as mortgagee in possession or to have a receiver appointed to take possession of all or any part of the Property, with the power to protect and preserve the Property, to operate the Property preceding foreclosure or sale, and to collect the Rents from the Property and apply the proceeds, over and above the cost of the receivership, against the Indebtedness. The mortgagee in possession or receiver may serve without bond if permitted by law. Lender's right to the appointment of a receiver shall exist whether or not the apparent value of the Property exceeds the Indebtedness by a substantial amount. Employment by Lender shall not disqualify a person from serving as a receiver.

**Judicial Foreclosure.** Lender may obtain a judicial decree foreclosing Grantor's interest in all or any part of the Property.

**Deficiency Judgment.** If permitted by applicable law, Lender may obtain a judgment for any deficiency remaining in the Indebtedness due to Lender after application of all amounts received from the exercise of the rights provided in this section.

**Other Remedies.** Lender shall have all other rights and remedies provided in this Mortgage or the Note or available at law or in equity.

**Sale of the Property.** To the extent permitted by applicable law, Borrower and Grantor hereby waive any and all right to have the Property marshalled. In exercising its rights and remedies, Lender shall be free to sell all or any part of the Property together or separately, in one sale or by separate sales. Lender shall be entitled to bid at any public sale on all or any portion of the Property.

**Notice of Sale.** Lender shall give Grantor reasonable notice of the time and place of any public sale of the Personal Property or of the time after which any private sale or other intended disposition of the Personal Property is to be made. Reasonable notice shall mean notice given at least ten (10) days before the time of

# MORTGAGE
## (Continued)

the sale or disposition. Any sale of the Personal Property may be made in conjunction with any sale of the Real Property.

**Election of Remedies.** Election by Lender to pursue any remedy shall not exclude pursuit of any other remedy, and an election to make expenditures or to take action to perform an obligation of Grantor under this Mortgage, after Grantor's failure to perform, shall not affect Lender's right to declare a default and exercise its remedies. Nothing under this Mortgage or otherwise shall be construed so as to limit or restrict the rights and remedies available to Lender following an Event of Default, or in any way to limit or restrict the rights and ability of Lender to proceed directly against Grantor and/or Borrower and/or against any other co-maker, guarantor, surety or endorser and/or to proceed against any other collateral directly or indirectly securing the Indebtedness.

**Attorneys' Fees; Expenses.** If Lender institutes any suit or action to enforce any of the terms of this Mortgage, Lender shall be entitled to recover such sum as the court may adjudge reasonable as attorneys' fees at trial and upon any appeal. Whether or not any court action is involved, and to the extent not prohibited by law, all reasonable expenses Lender incurs that in Lender's opinion are necessary at any time for the protection of its interest or the enforcement of its rights shall become a part of the Indebtedness payable on demand and shall bear interest at the Note rate from the date of the expenditure until repaid. Expenses covered by this paragraph include, without limitation, however subject to any limits under applicable law, Lender's attorneys' fees and Lender's legal expenses, whether or not there is a lawsuit, including attorneys' fees and expenses for bankruptcy proceedings (including efforts to modify or vacate any automatic stay or injunction), appeals, and any anticipated post-judgment collection services, the cost of searching records, obtaining title reports (including foreclosure reports), surveyors' reports, and appraisal fees and title insurance, to the extent permitted by applicable law. Grantor also will pay any court costs, in addition to all other sums provided by law.

**NOTICES.** Any notice required to be given under this Mortgage, including without limitation any notice of default and any notice of sale shall be given in writing, and shall be effective when actually delivered, when actually received by telefacsimile (unless otherwise required by law), when deposited with a nationally recognized overnight courier, or, if mailed, when deposited in the United States mail, as first class, certified or registered mail postage prepaid, directed to the addresses shown near the beginning of this Mortgage. All copies of notices of foreclosure from the holder of any lien which has priority over this Mortgage shall be sent to Lender's address, as shown near the beginning of this Mortgage. Any party may change its address for notices under this Mortgage by giving formal written notice to the other parties, specifying that the purpose of the notice is to change the party's address. For notice purposes, Grantor agrees to keep Lender informed at all times of Grantor's current address. Unless otherwise provided or required by law, if there is more than one Grantor, any notice given by Lender to any Grantor is deemed to be notice given to all Grantors.

**ADDITIONAL LIEN PROVISION.** The Grantor, without the prior written consent of the Lender, shall not effect, suffer or permit any voluntary or involuntary, consensual or non-consensual conveyance, sale, assignment, transfer, lien, pledge, mortgage, security interest or other encumbrance or alienation upon the Real Estate.

**MISCELLANEOUS PROVISIONS.** The following miscellaneous provisions are a part of this Mortgage:

**Amendments.** This Mortgage, together with any Related Documents, constitutes the entire understanding and agreement of the parties as to the matters set forth in this Mortgage. No alteration of or amendment to this Mortgage shall be effective unless given in writing and signed by the party or parties sought to be charged or bound by the alteration or amendment.

**Annual Reports.** If the Property is used for purposes other than Grantor's residence, Grantor shall furnish to Lender, upon request, a certified statement of net operating income received from the Property during Grantor's previous fiscal year in such form and detail as Lender shall require. "Net operating income" shall mean all cash receipts from the Property less all cash expenditures made in connection with the operation of the Property.

**Caption Headings.** Caption headings in this Mortgage are for convenience purposes only and are not to be

FILED DATE: 9/12/2018 12:24 PM   2018CH11483

FILED DATE: 9/12/2018 12:24 PM   2018CH11483

**MORTGAGE**
**(Continued)**

used to interpret or define the provisions of this Mortgage.

**Governing Law.** With respect to procedural matters related to the perfection and enforcement of Lender's rights against the Property, this Mortgage will be governed by federal law applicable to Lender and to the extent not preempted by federal law, the laws of the State of Illinois. In all other respects, this Mortgage will be governed by federal law applicable to Lender and, to the extent not preempted by federal law, the laws of the State of Indiana without regard to its conflicts of law provisions. However, if there ever is a question about whether any provision of this Mortgage is valid or enforceable, the provision that is questioned will be governed by whichever state or federal law would find the provision to be valid and enforceable. The loan transaction that is evidenced by the Note and this Mortgage has been applied for, considered, approved and made, and all necessary loan documents have been accepted by Lender in the State of Indiana.

**Joint and Several Liability.** All obligations of Borrower and Grantor under this Mortgage shall be joint and several, and all references to Grantor shall mean each and every Grantor, and all references to Borrower shall mean each and every Borrower. This means that each Grantor signing below is responsible for all obligations in this Mortgage. Where any one or more of the parties is a corporation, partnership, limited liability company or similar entity, it is not necessary for Lender to inquire into the powers of any of the officers, directors, partners, members, or other agents acting or purporting to act on the entity's behalf, and any obligations made or created in reliance upon the professed exercise of such powers shall be guaranteed under this Mortgage.

**No Waiver by Lender.** Lender shall not be deemed to have waived any rights under this Mortgage unless such waiver is given in writing and signed by Lender. No delay or omission on the part of Lender in exercising any right shall operate as a waiver of such right or any other right. A waiver by Lender of a provision of this Mortgage shall not prejudice or constitute a waiver of Lender's right otherwise to demand strict compliance with that provision or any other provision of this Mortgage. No prior waiver by Lender, nor any course of dealing between Lender and Grantor, shall constitute a waiver of any of Lender's rights or of any of Grantor's obligations as to any future transactions. Whenever the consent of Lender is required under this Mortgage, the granting of such consent by Lender in any instance shall not constitute continuing consent to subsequent instances where such consent is required and in all cases such consent may be granted or withheld in the sole discretion of Lender.

**Severability.** If a court of competent jurisdiction finds any provision of this Mortgage to be illegal, invalid, or unenforceable as to any circumstance, that finding shall not make the offending provision illegal, invalid, or unenforceable as to any other circumstance. If feasible, the offending provision shall be considered modified so that it becomes legal, valid and enforceable. If the offending provision cannot be so modified, it shall be considered deleted from this Mortgage. Unless otherwise required by law, the illegality, invalidity, or unenforceability of any provision of this Mortgage shall not affect the legality, validity or enforceability of any other provision of this Mortgage.

**Merger.** There shall be no merger of the interest or estate created by this Mortgage with any other interest or estate in the Property at any time held by or for the benefit of Lender in any capacity, without the written consent of Lender.

**Successors and Assigns.** Subject to any limitations stated in this Mortgage on transfer of Grantor's interest, this Mortgage shall be binding upon and inure to the benefit of the parties, their successors and assigns. If ownership of the Property becomes vested in a person other than Grantor, Lender, without notice to Grantor, may deal with Grantor's successors with reference to this Mortgage and the Indebtedness by way of forbearance or extension without releasing Grantor from the obligations of this Mortgage or liability under the Indebtedness.

**Time is of the Essence.** Time is of the essence in the performance of this Mortgage.

**Waive Jury.** All parties to this Mortgage hereby waive the right to any jury trial in any action, proceeding, or counterclaim brought by any party against any other party.

## MORGAGE
**(Continued)**                                                        Page 12

FILED DATE: 9/12/2018 12:24 PM   2018CH11483

**Waiver of Homestead Exemption.** Grantor hereby releases and waives all rights and benefits of the homestead exemption laws of the State of Illinois as to all Indebtedness secured by this Mortgage.

**DEFINITIONS.** The following capitalized words and terms shall have the following meanings when used in this Mortgage. Unless specifically stated to the contrary, all references to dollar amounts shall mean amounts in lawful money of the United States of America. Words and terms used in the singular shall include the plural, and the plural shall include the singular, as the context may require. Words and terms not otherwise defined in this Mortgage shall have the meanings attributed to such terms in the Uniform Commercial Code:

**Borrower.** The word "Borrower" means Platinum Property Holdings Incorporated and Piotr Palider and includes all co-signers and co-makers signing the Note and all their successors and assigns.

**Default.** The word "Default" means the Default set forth in this Mortgage in the section titled "Default".

**Environmental Laws.** The words "Environmental Laws" mean any and all state, federal and local statutes, regulations and ordinances relating to the protection of human health or the environment, including without limitation the Comprehensive Environmental Response, Compensation, and Liability Act of 1980, as amended, 42 U.S.C. Section 9601, et seq. ("CERCLA"), the Superfund Amendments and Reauthorization Act of 1986, Pub. L. No. 99-499 ("SARA"), the Hazardous Materials Transportation Act, 49 U.S.C. Section 1801, et seq., the Resource Conservation and Recovery Act, 42 U.S.C. Section 6901, et seq., or other applicable state or federal laws, rules, or regulations adopted pursuant thereto.

**Event of Default.** The words "Event of Default" mean any of the events of default set forth in this Mortgage in the events of default section of this Mortgage.

**Grantor.** The word "Grantor" means Platinum Property Holdings, L.L.C. AKA Platinum Property Holdings Incorporated.

**Guaranty.** The word "Guaranty" means the guaranty from guarantor, endorser, surety, or accommodation party to Lender, including without limitation a guaranty of all or part of the Note.

**Hazardous Substances.** The words "Hazardous Substances" mean materials that, because of their quantity, concentration or physical, chemical or infectious characteristics, may cause or pose a present or potential hazard to human health or the environment when improperly used, treated, stored, disposed of, generated, manufactured, transported or otherwise handled. The words "Hazardous Substances" are used in their very broadest sense and include without limitation any and all hazardous or toxic substances, materials or waste as defined by or listed under the Environmental Laws. The term "Hazardous Substances" also includes, without limitation, petroleum and petroleum by-products or any fraction thereof and asbestos.

**Improvements.** The word "Improvements" means all existing and future improvements, buildings, structures, mobile homes affixed on the Real Property, facilities, additions, replacements and other construction on the Real Property.

**Indebtedness.** The word "Indebtedness" means all principal, interest, and other amounts, costs and expenses payable under the Note or Related Documents, together with all renewals of, extensions of, modifications of, consolidations of and substitutions for the Note or Related Documents and any amounts expended or advanced by Lender to discharge Grantor's obligations or expenses incurred by Lender to enforce Grantor's obligations under this Mortgage, together with interest on such amounts as provided in this Mortgage. Specifically, without limitation, Indebtedness includes the future advances set forth in the Future Advances provision, together with all interest thereon and all amounts that may be indirectly secured by the Cross-Collateralization provision of this Mortgage.

**Lender.** The word "Lender" means First Merchants Bank, N.A. , its successors and assigns.

**Mortgage.** The word "Mortgage" means this Mortgage between Grantor and Lender.

**Note.** The word "Note" means the promissory note dated September 17, 2014, **in the original principal amount of $1,525,000.00** from Borrower to Lender, together with all renewals of, extensions of,

FILED DATE: 9/12/2018 12:24 PM   2018CH11483

## MORTGAGE
### (Continued)

modifications of, refinancings of, consolidations of, and substitutions for the promissory note or agreement. The interest rate on the Note is 4.250% based on a year of 360 days. Payments on the Note are to be made in accordance with the following payment schedule: in 59 regular payments of $9,491.21 each and one irregular last payment estimated at $1,265,916.55. Borrower's first payment is due October 15, 2014, and all subsequent payments are due on the same day of each month after that. Borrower's final payment will be due on September 15, 2019, and will be for all principal and all accrued interest not yet paid. Payments include principal and interest. The maturity date of the Note is September 15, 2019.

**Personal Property.** The words "Personal Property" mean all equipment, fixtures, and other articles of personal property now or hereafter owned by Grantor, and now or hereafter attached or affixed to the Real Property; together with all accessions, parts, and additions to, all replacements of, and all substitutions for, any of such property; and together with all proceeds (including without limitation all insurance proceeds and refunds of premiums) from any sale or other disposition of the Property.

**Property.** The word "Property" means collectively the Real Property and the Personal Property.

**Real Property.** The words "Real Property" mean the real property, interests and rights, as further described in this Mortgage.

**Related Documents.** The words "Related Documents" mean all promissory notes, credit agreements, loan agreements, environmental agreements, guaranties, security agreements, mortgages, deeds of trust, security deeds, collateral mortgages, and all other instruments, agreements and documents, whether now or hereafter existing, executed in connection with the Indebtedness.

**Rents.** The word "Rents" means all present and future rents, revenues, income, issues, royalties, profits, and other benefits derived from the Property.

**GRANTOR ACKNOWLEDGES HAVING READ ALL THE PROVISIONS OF THIS MORTGAGE, AND GRANTOR AGREES TO ITS TERMS.**

**GRANTOR:**

**PLATINUM PROPERTY HOLDINGS, L.L.C. AKA PLATINUM PROPERTY HOLDINGS INCORPORATED**

By: _____

Piotr Palider, Sole Officer, Director and Shareholder of Platinum Property Holdings, L.L.C. AKA Platinum Property Holdings Incorporated

FILED DATE: 9/12/2018 12:24 PM    2018CH11483

**MORTGAGE**
**(Continued)**                                                    **Page 14**

## CORPORATE ACKNOWLEDGMENT

STATE OF _Illinois_                              )
                                                  ) SS
COUNTY OF _Cook_                                 )

On this _17 TH_ day of _September_ _2014_ before me, the undersigned Notary Public, personally appeared Piotr Palider, Sole Officer, Director and Shareholder of Platinum Property Holdings, L.L.C. AKA Platinum Property Holdings Incorporated , and known to me to be an authorized agent of the corporation that executed the Mortgage and acknowledged the Mortgage to be the free and voluntary act and deed of the corporation, by authority of its Bylaws or by resolution of its board of directors, for the uses and purposes therein mentioned, and on oath stated that he or she is authorized to execute this Mortgage and in fact executed the Mortgage on behalf of the corporation.

By _Eulana M Jones_                    Residing at _10 S. LaSalle_

Notary Public in and for the State of _Illinois_

My commission expires

```
╔══════════════════════════════════╗
║          OFFICIAL SEAL           ║
║         EULANA M JONES           ║
║   Notary Public - State of Illinois   ║
║  My Commission Expires Mar 5, 2017   ║
╚══════════════════════════════════╝
```

LaserPro, Ver. 14.3.10.003  Copr. D+H USA Corporation 1997, 2014.    All Rights Reserved.    - IL/IN
C:\LaserProDist\CFI\LPL\G03.FC  TR-39468  PR-99

# MOTION FOR RELIEF FROM STAY

# EXHIBIT C

**IN THE CIRCUIT COURT OF COOK COUNTY, ILLINOIS**
**MUNICIPAL DEPARTMENT–FIRST DISTRICT**

THE CITY OF CHICAGO, a municipal corporation,　　)
　　　　　　　　　　　　　Plaintiff,　　　　　　　)
　　　　　　　　　　　　　　　　　　　　　　　　)　　No: _14_ MI _4205 53_
v.　　　　　　　　　　　　　　　　　　　　　　　)
_Plantosia Project  Molly + FA_　　　　　　　　　)　　Re: _5235-47  W Lak_
　　　　　　　　　　　　_et al._, Defendant(s).　　)
　　　　　　　　　　　　　　　　　　　　　　　　)　　Courtroom 11 ___ Richard J. Daley Center

Pink Copy for Defendant(s)　(photocopy if required)
Yellow Copy for City of Chicago Department of Law
White Original for Court Records

**EMERGENCY PETITION FOR APPOINTMENT OF A LIMITED / GENERAL RECEIVER** (circle one)

The City of Chicago ("City"), by its attorney, the Corporation Counsel, pursuant to 65 ILCS 5/11-31-1, 5/11-31-2 and 5/11-13-15 petitions the Court to appoint a receiver, with the powers granted and duties imposed upon receivers by courts and by statutes, until further order of Court. In support of this Petition, City states as follows:

1. Plaintiff, City, is a municipal corporation, authorized by 65 ILCS 5/11-31-2 (2004) to seek appointment of a receiver to correct conditions that fail to conform to minimum standards of health and safety;

2. The subject premises ("Premises") is located within the City of Chicago, and defendants are owners of or have an interest in Premises;

3. City filed this suit against defendant(s), alleging that dangerous and hazardous conditions exist at Premises. These dangerous and hazardous conditions pose an imminent threat of irreparable harm and injury to the health, safety and welfare of the public and the occupants of Premises;

4. Defendant(s) has/have failed to correct, after due notice, these unsafe and/or unhealthy building conditions;

5. Equitable remedies other than the appointment of a receiver are inadequate in this case because, on information and belief, defendants have failed and are not currently able or willing to abate the unhealthy and/or unsafe conditions in the premises. The conditions which now exist at the premises will remain unabated without the appointment of a receiver, and will result in the loss of salvageable property, as well as irreparable harm to the subject property's occupants, neighbors of the premises and the general public; and

6. Applicant's bond should be excused, and the surety bond waived, pursuant to 65 ILCS 5/11-31-2.3 (2004).

**WHEREFORE,** the Plaintiff, City of Chicago, respectfully requests that this Court:

A. Appoint a:　　[ ] General Receiver
　　　　　　　　[✓] Limited Receiver, with powers granted and duties imposed as specified in paragraph B below
　　until further order of court.

B. Authorize and order the receiver to enter into possession of the premises and to perform the following duties:

[✓] Prepare a feasibility study regarding the care, management, and repair of the subject property;

[ ] Vacate the subject property, which includes, but is not limited to, refunding any existing security deposits owed to tenants if they are being permanently relocated; hiring movers and arranging for transportation to new residences;

[ ] Board and secure the subject property or board and secure the subject property after it is vacated;

[ ] Collect rent, if the subject property is occupied and will not be vacated;

[✓] Make repairs;

[✓] Abate any dangerous and hazardous conditions at the subject property, including: _all leaking wires, studies, water, i wall of heat_
_+ Gallon Tenant + fucking cit's as needed_
_Provide relocation assistance to occupants if a vacate is needed_

C. Authorize the receiver to retain counsel pursuant to Circuit Court Rule 8.2.

D. Authorize the receiver to employ agents to assist in the performance of his/her receivership duties.

E. Enjoin and restrain defendants from interfering with or obstructing the receiver's performance of her/her receivership duties.

F. Upon the appointment of the receiver, the owner(s) and/or owner's agent(s) shall provide to the receiver access to all areas of the building and deliver master keys for all units within 24 hours, along with all items and materials necessary for the receiver to perform his or her duties including rent rolls and access to all financial accounts within seven days.

G. Excuse applicant's bond and receiver's bond pursuant to 65 ILCS 5/11-31-2.3.

H. Authorize the receiver to issue receiver's certificates for the costs and expenses of the receivership.

I. Continue this matter for a receiver's report and determination of whether a general receivership of the premises is feasible.

**VERIFICATION BY CERTIFICATION**

Pursuant to section 1-109 of the Code of Civil Procedure, the undersigned certifies that he or she is an attorney for the City of Chicago, and that he/she is the authorized agent of the Plaintiff for the purpose of making this certification, and that the statements set forth in this Petition are true and correct, except as to matters therein stated to be on information and belief and as to such matters the undersigned certifies as aforesaid the he or she verily believes the same to be true.

By: _____
Attorney for Plaintiff
Corporation Counsel #90909
30 N. LaSalle, Room 700
Chicago, IL 60602
(312) 744-8791

_Steve M Levine_
_City of Chicago_

FORM BLE.5001    rev. 3/2011

_FILED_
_MAR 12 2019_
_DOROTHY BROWN_
_CLERK OF CIRCUIT COURT_

# MOTION FOR RELIEF FROM STAY

# EXHIBIT D

Return Date: No return date scheduled
Hearing Date: 9/4/2019 1:00 PM - 1:00 PM
Courtroom Number:
Location:

FILED DATE: 8/13/2019 3:48 PM    2018CH11483

FILED
8/13/2019 3:48 PM
DOROTHY BROWN
CIRCUIT CLERK
COOK COUNTY, IL
2018CH11483

6162301

**IN THE CIRCUIT COURT OF COOK COUNTY, ILLINOIS**
**COUNTY DEPARTMENT, CHANCERY DIVISION**

| | | |
|---|---|---|
| FIRST MERCHANTS BANK, an Indiana Bank, Formerly Known as FIRST MERCHANTS BANK, N.A., successor by merger of Citizen Financial Bank, | ) ) ) ) ) | Case No.: 2018 CH 11483 |
| | ) | Mortgage Foreclosure |
| Plaintiff, | ) | |
| | ) | Property Address: 5235 W. Lake Street |
| v. | ) | Chicago, Illinois 60644 |
| | ) | |
| PLATINUM PROPERTY HOLDINGS, LLC, AKA PLATINUM PROPERTY HOLDINGS INC., CITY OF CHICAGO, PIOTR PALIDER, UNKNOWN TENANTS IN POSSESSION, UNKONWN OWNERS and NON-RECORD CLAIMANTS, | ) ) ) ) ) ) ) | Cal. 62 – Marian E. Perkins |
| | ) | |
| Defendants. | ) | |

## FINAL REPORT OF RECEIVER

The Receiver, Charles Delaney of Friedman Real Estate Brokerage IL LLC submits a report summarizing the activities performed by the Receiver from June 16, 2019 through August 9, 2019.

Pursuant to Court Order on March 20, 2019, Charles Delaney of Friedman Real Estate Brokerage IL LLC ("**Receiver**") was appointed as receiver pursuant to the *Order Appointing Receiver for Non-Residential Property* ("**Receiver Order**", attached as **Exhibit A**) for the certain mortgaged real estate commonly known as 5235 W. Lake Street, Chicago, Illinois 60644 ("**Property**"). The Receiver was terminated on July 11, 2019 upon the Receiver's motion.

### Description of the Property and General Status

The Property is a fifty-three-unit multifamily apartment community comprised of five commercial units and forty-eight residential units. The building is masonry constructed.

The building's maintenance is deplorable and the Property is in bad condition. Upon information and belief, the Property has numerous violations with the City. On or about July 9, 2019, the City appointed its own receiver over the Property to, upon information and belief, vacate the Property.

Defendants never provided any leases or any of the required documentation required under the Receiver Order.

FILED DATE: 8/13/2019 3:48 PM   2018CH11483

After the Receiver was appointed, the Receiver stopped all major water leaks at the Property and secured 90% of the doors (the ones that are not 100% secured need a locksmith to change cylinders for the aluminum store front/entry doors and some of the basement doors) but unfortunately within days the water leaks returned and the doors were broken again either by vandals or residents. The Receiver also installed carbon monoxide and smoke detectors in hallways and in vacant units but some of these detectors were also subsequently removed.

### Occupancy and Rent Status

It is believed that forty of the residential units and two commercial units are occupied. The Receiver wasn't able to obtain any leases and believes that leases may not exist for the tenants that are occupying the units in the building. A rent roll from 2017 is attached as **Exhibit B** and is the most recent rent roll that the Plaintiff was able to provide to the Receiver.

### Bond

The Receiver posted a Receiver's Bond on March 25, 2019 in the amount of $20,000 as required by the Receiver Order. The Receiver's Bond was issued by the Hartford Fire Insurance Company, attached as **Exhibit C**.

### Insurance

The Property was insured with 235 Insurance for both liability and Property coverage but the insurance was canceled by the carrier on July 5, 2019 due to the state of the Property. The Receiver wasn't able to obtain new insurance policies prior to being terminated. The Receiver and Plaintiff were added as additional insureds and certificate holders to these policies. Both certificates are attached as **Exhibit D**.

### Property Taxes

The Receiver never obtained the property tax identifications numbers for the Property prior to his termination.

### Banking and Financial Activity

The Receiver never received any pre-receivership funds from the Defendants or from the current tenants. As such, the Receiver never opened a bank account.

### Receiver Activity

In addition to the items already mentioned, on various dates during this reporting period, the Receiver had lengthy discussions with the Plaintiff's representatives, and Plaintiff's counsel regarding the state of the Property, its current tenants and termination of the receivership.

Pursuant to the Receiver Order, the Receiver was authorized to employ a property management company and the Receiver intended to hire Cagan Management Group, Inc. to act as his property management company ("**Cagan**"). However, Cagan wasn't able to act as the property manager of

FILED DATE: 8/13/2019 3:48 PM   2018CH11483

the Property due to its existing condition. The Receiver never found another property management company to manage the Property prior to his termination.

Due to the fact that the Property isn't generating any income and the Receiver never collected any funds from the residents at the Property, the Plaintiff is paying for all of the Receiver's fees and expenses, and the Property's costs and expenses.

[SIGNATURE CONTAINED ON FOLLOWING PAGE]

[REMAINDER OF PAGE INENTIONALLY LEFT BLANK]

FILED DATE: 8/13/2019 3:48 PM    2018CH11483

Respectfully submitted,

By: _____

Charles Delaney, Receiver
Friedman Real Estate Brokerage IL LLC
34975 West Twelve Mile Road
Farmington Hills, Michigan 48331
chuck.delaney@freg.com

Dated: August 9, 2019

FILED DATE: 8/13/2019 3:48 PM    2018CH11483

# EXHIBIT A

FILED DATE: 8/13/2019 3:48 PM   2018CH11483

## IN THE CIRCUIT COURT OF COOK COUNTY, ILLINOIS
## COUNTY DEPARTMENT, CHANCERY DIVISION

| | |
|---|---|
| FIRST MERCHANTS BANK, an Indiana bank, Formerly Known as FIRST MERCHANTS BANK, N.A., | ) ) ) |
| Plaintiff, | ) ) |
| | ) CASE NO.18 CH 11483 |
| v. | ) ) |
| | ) MORTGAGE FORECLOSURE |
| PLATINUM PROPERTY HOLDINGS, LLC, AKA PLATINUM PROPERTY HOLDINGS, INC. | ) ) |
| CITY OF CHICAGO, PIOTR PALIDER, | ) PA:   5235 W. Lake Street |
| UNKNOWN TENANTS IN POSSESSION, | )           Chicago, IL 60644 |
| UNKNOWN OWNERS and NON-RECORD | ) |
| CLAIMANTS, | ) Cal. 62 – Marian E. Perkins |
| | ) |
| Defendants. | ) |

### ORDER APPOINTING RECEIVER FOR NON-RESIDENTIAL PROPERTY

THIS CAUSE was heard on Plaintiff's Emergency motion pursuant to the Illinois Mortgage Foreclosure Act, 735 ILCS 5/15-1101 *et seq.*, seeking an order appointing a Receiver for the non-residential property located at 5235 W. Lake Street, Chicago, IL 60644. That property is the subject of Plaintiff's complaint in mortgage foreclosure. The court has jurisdiction over the parties and subject matter and is fully advised in the premises. As used herein "Defendant" and "Mortgagor" shall also mean "Defendants" and "Mortgagors" as the context requires.

### THE COURT FINDS:

1. The Plaintiff filed a complaint seeking to foreclose a Mortgage which alleges that the defendant-mortgagor defaulted on its obligations. A copy of the Mortgage is attached to the complaint, is dated September 17, 2014, was executed by Defendant-Mortgagor, and was recorded as document number 1428104034 with the Cook County Recorder of Deeds against the subject property identified above. The Mortgage secures a Promissory Note, a copy of which is attached to the complaint, signed by Defendant/Mortgagor, dated September 17, 2014. The principal amount of the original Promissory Note is $1,525,000.00.

2. The property consists of a 54-unit mixed use residential/commercial apartment building, and is owned by the Defendant-Mortgagor for commercial/investment purposes and is not for use as Defendant/ Mortgagor's personal residence.

3. The complaint and the Affidavit of David C. Hunt in support of the Motion to Appoint a Receiver alleges that "Events of Default," as defined in the mortgage and note, have occurred due to the Defendant-Mortgagor's failure to 1) make payments of principal and interest due for July 15, 2018, and for each and every month thereafter; 2) by allowing

FILED DATE: 8/13/2019 3:48 PM   2018CH11483

liens to be placed upon the Property and 3) defaulting on a cross-collateralized Loan (Loan XXXX028), which constitutes a default under this Loan (Loan XXXX981). These Events of Default gives Plaintiff the right to accelerate all amounts due under the Mortgage and Note and to demand the same be immediately payable.

4. The Mortgage provides on page 9 that upon the occurrence of an Event of Default, the mortgagee shall have the right to make application for appointment of a Receiver for the property.

5. The property does not fall within the definition of "Residential Real Estate" under the Illinois Mortgage Foreclosure Law (735 ILCS 5/15-1219).

6. The court finds that due notice of the motion has been given pursuant to 735 ILCS 5/15-1706(d), Plaintiff has established good cause for the waiver of notice and service upon the Defendant of this Emergency Motion for Appointment of Receiver.

Based on the allegations of the complaint, the terms and provisions of the Mortgage and Note, and the motion to appoint a Receiver, there is a reasonable probability that Plaintiff will prevail on a final hearing in this matter. The Defendant has not shown good cause why the Receiver should not be appointed.

## IT IS HEREBY ORDERED:

1. The Receiver, Charles Delaney of Friedman Real Estate Brokerage II LLC, Illinois License Number 481.012525, based on the information provided to the court, is deemed to be qualified to act as Receiver and to manage the property as would a reasonably prudent person.

2. Plaintiff's motion for an order appointing a Receiver for the subject property is granted and the above-named Receiver is hereby appointed. This order will not become effective until the court has approved the Receiver's bond as set forth below.

3. The Receiver is empowered with all the duties, responsibilities and powers enumerated in the Illinois Mortgage Foreclosure Law (735 ILCS 5/15-1101 *et seq.*).

4. The Receiver, in his sole discretion, may discharge the authority, powers and duties of the day-to day management activities of the Property, including collecting rent, preparing financial reports and leasing of the Property, to a Property Manager ("Property Manager"), including, but not limited to Cagan Management Group Inc., for the same fees allowed the Receiver under this Order

5. The Receiver or its Property Manager is authorized to collect all rents relating to the property, and the tenants of the property are directed to pay rent to the Receiver or its Property Manager from the effective date of this order, until further notice. The Receiver shall allocate all receipts from the operation of the real estate and other property subject to the Mortgage in accordance with 735 ILCS 5/15-1704(d).   Within 21 days, the

FILED DATE: 8/13/2019 3:48 PM   2018CH11483

Receiver shall provide notice to any and all occupants of the property as required by 735 ILCS 5/15-1704(f).

6. The Receiver or its Property Manager shall take possession of and receive from all depositories, banks, brokerages and otherwise (collectively the "Financial Institutions"), any money on deposit in all such financial institutions belonging to or arising from the operation of the Property, whether such funds be in accounts titled in the name of Defendant or not (but excluding any monies paid to or held by Plaintiff). All financial institutions are directed to deliver such deposits to the Receiver or its Property Manager any such records as the Receiver or its Property Manager may reasonably request with respect to such accounts. The Receiver may indemnify the financial institution upon whom such demand is made, and is empowered to open or close any such accounts. The Receiver or its Property Manager shall deposit monies and funds collected and received in connection with the Property at a federally insured banking institution or savings association with offices in the State of Illinois, which are not parties to this case.

7. The Receiver or its Property Manager shall have full power to make, enforce, modify, negotiate and enter into such leases of the Property as the Receiver or its Property Manager may reasonably deem appropriate in connection with the discharge of the Receiver's duties; provided, however, no lease shall extend beyond the termination of the receivership unless authorized by the Court. The Receiver or its Property Manager shall have the authority, within the applicable local, county, or state rules and regulations, to pursue tenants for their contracted rent and retain professionals to assist in the collection or eviction of delinquent tenants.

8. The Receiver shall have full power to enter into a listing agreement with a third party or an entity/individual related to Friedman Real Estate Brokerage II LLC, Illinois License Number 481.012525, to market, show and sell real estate, with such sale conditional on the Court's approval.

9. The Receiver or its Property Manager shall have full power to open or caused to be opened or changed, accounts with service providers, including but not limited to electric, gas, water, sewer, trash, waste, security, cable, Internet, and telephone, and only be responsible for paying those services incurred after the appointment of the Receiver, nor shall any service provider be permitted to terminate such service or require new account information based upon unpaid bills for services rendered prior to the appointment of the Receiver or because of the appointment of the Receiver pursuant to the Order. No service provider may require the Receiver to post any type of security deposit in order to begin or continue service. No service provider shall be allowed to transfer to this receivership any outstanding amounts due from other receiverships associated with Friedman Real Estate Brokerage II LLC, or any related entity.

10. Defendant, all Property Managers and all those in active participation or concert with them who receive notice of this Order, and all those having claims against the Property, who receive notice of this Order, are adjoined from and shall not terminate or withhold any electric, gas, water, sewer, telephone or other utility service supplying the Property,

FILED DATE: 8/13/2019 3:48 PM   2018CH11483

require any utility deposit or otherwise interfere with the continued operations of the Property.

11. No person or entity shall file suit against the Receiver, its Property Manager, or take other action against the Receiver or Property Manager, without an order of this Court permitting a suit or action provided, however, that no prior Court order is required to file a motion in this action to enforce the provisions of this Order or any other order of this Court in this action.

12. The Receiver, its Property Manager, and their employees, agents and attorneys shall have no personal liability in connection with any liabilities, obligations, liens or amounts owed to any of Defendant's creditors because of its duties as Receiver. Nothing in this Order shall grant any rights to trade creditors or general unsecured creditors, whose rights shall be solely determined in accordance with Illinois law.

13. The Receiver, its Property Manager, and their employees, agents and attorneys shall have no personal liability and they shall have no claim asserted against them relating to the Receiver's duties under this Order, except for claims due to their gross negligence, gross or willful misconduct, malicious acts and/or the failure to comply with this Court's orders.

14. Defendants, Platinum Property Holdings, LLC, AKA Platinum Property Holdings, Inc., Piotr Palider, and their agents shall hereinafter refrain from occupying or being present upon the Property without prior written permission from the Receiver.

15. Within five business days after the Receiver's bond is approved, the Defendants, Platinum Property Holdings, LLC, AKA Platinum Property Holdings, Inc. and Piotr Palider, shall turn over to the Receiver or its Property Manager, documents in format which relate in **any way** to the following:

   (a) Income collected for the Property after the effective date of this order;

   (b) Contracts, documents, and agreements relating to accounts receivable and payable, operation, management, sale, leasing and/or control of the Property;

   (c) All documents such as insurance policies, real estate taxes, notices and/or bills which concern the property in any way;

   (d) Documents relating to the property's condition, operation and maintenance or relating to any persons employed to maintain, secure or repair the property;

   (e) A list by case name and number of all current litigation or regulatory proceedings which involve the Property including, but not limited to: (1) abatement of taxes or reduction of assessments, (2) mechanics lien claims, (3) building code violations or zoning enforcement action; and (4) any other litigation or legal or related proceedings;

FILED DATE: 8/13/2019 3:48 PM   2018CH11483

    (f) All keys needed to operate, repair and/or maintain the Property; and

    (g) A list of all tenants and their payment history for the last two years.

16. Defendants, Platinum Property Holdings, LLC, AKA Platinum Property Holdings, Inc. and Piotr Palider, shall promptly and fully cooperate with Receiver or its Property Manager in connection with the Receiver's performance of his/her duties and are prohibited from interfering with the powers or duties of Receiver or its Property Manager. Defendants, Platinum Property Holdings, LLC, AKA Platinum Property Holdings, Inc. and Piotr Palider, are further prohibited from directing anyone to interfere, in any way, with the Receiver in the execution of this order.

17. Defendant shall fully cooperate with the Receiver in adding the Receiver, its Property Manager, Plaintiff as additional insureds, and Plaintiff as the mortgagee on all insurance relating to the operation and management of the Property including, but not limited to, fire, extended coverage, property damage, liability, fidelity, errors and omissions, and workers' compensation, and modifying the policies if deemed appropriate by the Receiver, but subject to Plaintiff's approval for any modifications to insurance. Defendant and its Property Managers, employees, and agents are prohibited from cancelling, reducing, or modifying any and all insurance coverage in existence with respect to the Receivership Property. Any and all insurance refunds or insurance claim payments are to be made to the Receiver.

18. The Receiver shall file periodic written reports with the court. Each report shall be prepared with a case caption, personally signed by the Receiver, and filed with the clerk of the court. The Receiver or the Plaintiff's attorney must mail copies of the report to all parties in the case (including those who have not formally appeared) at least five court days before the hearing on the report. The mailing shall include a notice of motion indicating the time, date and courtroom number applicable to the approval of the report, and a proof of service. Reports will be presented on a schedule established by the court for each particular case.

19. Each report shall include, at a minimum: a description of the property (number of units, type of use, size and condition), contact information for the Receiver, a list of tenants with the amount of their rent, a summary of any litigation involving the Property of which the Receiver is aware, a report on any failure of the Mortgagor or any tenant to cooperate with the requirements of the Receiver order, verification that the Property is adequately insured, a detailed billing statement for the Receiver's fees, a draft order approving the report and setting the case for the next Receiver's report, a photograph of the outside of the Property (first report only), an income/expense statement, current balance on hand, background information on any matter for which the Receiver is requesting special court approval, and a check register showing income received and expenses incurred since the previous report.

20. The Receiver may not employ attorneys except with explicit court approval.

FILED DATE: 8/13/2019 3:48 PM   2018CH11483

21. The Receiver or a knowledgeable representative thereof must appear in court when his/her report is presented.

22 The Receiver's fees shall be charged at the following rates:

| | |
|---|---|
| **Profession Fees for Receivership:**<br>Receiver | $225.00/hour, plus travel-related expenses |
| **Property Management Fees:** | Six Percent (6% ) of collected income or $2,600.00 per month, whichever is greater. |
| **Shared Technology Fee:** | $5.00 per unit to be paid monthly. Copies may be charged back to the building at five (.05) cents per copy & postage will be an extra expense of the building. All rental payments shall be processed electronically & and all associated costs shall be incurred by the Owner. |
| **Leasing Fees:** | Seventy-Five Percent (75%) of a month's rent for new rentals; Seventy-Five ($75.00) Dollars for Renewal Leases. |
| **OnBoard Fees:** | A one-time initial OnBoard fee of One Thousand ($1,000.00) Dollars. |
| **Capital Project Fees:** | All capital projects with a cost that exceeds Seven Thousand Five Hundred ($7,500.00) Dollars, a fee of Five Percent (5%) of the project is incurred. |

23 The court will review all fee requests for reasonableness. The court reserves the right to reduce any fees which it deems to be excessive, including fees charged under the above-listed fee schedule. Receiver's certificates shall constitute a first and prior lien on the property.

24. With the consent of the Plaintiff, the Receiver or its Property Manager may authorize necessary improvements to the property not to exceed the cost of $5,000.00. The Receiver or its Property Manager has the power to procure or maintain appropriate utility services for the property and to procure or maintain appropriate insurance coverage for the property.

FILED DATE: 8/13/2019 3:48 PM    2018CH11483

25. This order is not effective until the court has approved the Receiver's bond in the amount of $ 20,000.00 , which must be issued by a court-approved surety company and signed by a court-approved attorney-in-fact for the surety company. Plaintiff or the Receiver shall deliver the bond along with this order to chambers for approval.

26. Plaintiff shall immediately forward a copy of this order to the Defendants, Platinum Property Holdings, LLC, AKA Platinum Property Holdings, Inc. and Piotr Palider, or any attorney who has filed an appearance on their behalf and file proof of service thereof with the court.

27. This case is continued to May 20 , 2019 at 1:00 p.m. in courtroom 2808 of the Daley Center for status and approval of the first Receiver's report. The first report shall be filed on or before May 7 , 2019 and shall cover the period beginning when the bond is approved and ending on April 30 , 2019.

28. All objections to the Receiver's Report shall be filed on or before May 14 , 2019.

ENTER:

Judge _____

Date: _____

Circuit Court-2201

Prepared by:
Name:   Carole Griffin Ruzich
Name:   Griffin & Gallagher, LLC, #71102
Atty. for: Plaintiff
Address: 10001 S. Roberts Road
City/State/Zip: Palos Hills, IL 60465
Telephone: 708.598.6800
Email: carole@griffingallagher.com

FILED DATE: 8/13/2019 3:48 PM   2018CH11483

# EXHIBIT B

FILED DATE: 8/13/2019 3:48 PM   2018CH11483

04/24/2017   14:40 Chicago Laramie Currency          (FAX)773 287 5227          P.002/005

# PLATINUM PROPERTY HOLDINGS INC

**Apartment Rent Roll**   Borrower Name:   **Apartment Rent Roll #**

Property Address:

| Tenant Name | Tenant Since | Number of Rooms | Number of Bedrooms | Lease or Tenant at W |
|---|---|---|---|---|
| MARY BALL | 4-01-2013 | 5 | 2 | LEASE |
| DARNELL AND DORETTA HARRIS | 6-01-2016 | 5 | 2 | LEASE |
| LINYE ROBINSON | 8-01-2013 | 5 | 2 | LEASE |
| KARRY JACKSON | 8-01-2013 | 5 | 2 | LEASE |
| ERIKA GRANT | 9-01-2014 | 5 | 2 | LEASE |
| KRIS AND MARSHAE SMITH | 10-01-2016 | 5 | 3 | LEASE |
| KEANNA FORD | 9-01-2014 | 5 | 2 | LEASE |
| SHARRON CLANTON | 8-01-2013 | 5 | 2 | LEASE |
| FABIUS HAGGRETT | 7-01-14 | 8 | 2 | LEASE |
| LILY MONTGOMERY | 3-01-2015 | 5 | 2 | LEASE |
| ELNORA BOOKER | 9-01-2015 | 5 | 2 | LEASE |
| MICKEY WILEY | 8-01-2015 | 5 | 2 | LEASE |
| ALICIA SANDRALL | 4-01-2015 | 4 | 1 | LEASE |
| NAKITA MARTIN | 8-01-2015 | 4 | 1 | LEASE |
| SHAE MOLLY | 4-01-2014 | 4 | 1 | LEASE |

FILED DATE: 8/13/2019 3:48 PM   2018CH11483

**Apartment Rent Roll**

**Apartment Rent Roll form**

Borrower Name:

Property Address:

| Tenant Name | Tenant Since | Number of Rooms | Number of Bedrooms | Lease or Tenant at Will | Subsidized (Y/N) | Total Monthly Rent | Amount Paid By Tenant Per Mo. |
|---|---|---|---|---|---|---|---|
| VACANT UNIT 5227 W LAKE #1 | 4-01-2015 | 4 | 1 | LEASE | N | 0 | 0 |
| CHARLIE BAILEY | 8-01-2016 | 4 | 1 | LEASE | N | 600 | 600 |
| RILEY MOORE | 9-01-2016 | 4 | 1 | LEASE | N | 980 | 980 |
| DORA AMOS | 6-01-2015 | 4 | 1 | LEASE | N | 700 | 700 |
| ANDRE PORTER | 3-01-2014 | 4 | 1 | LEASE | Y | 900 | 75 |
| SANDRA PINKERTON | 8-01-2015 | 4 | 1 | LEASE | Y | 800 | 149 |
| WILLIE LEE | 5-15-2013 | 4 | 1 | LEASE | N | 950 | 950 |
| REGINALD RICKS | 4-01-2015 | 4 | 1 | LEASE | N | 670 | 670 |
| VICTORIA HENDERSON | 5-01-2015 | 4 | 1 | LEASE | N | 670 | 670 |
| SPENCER HICKS | 8-01-2012 | 4 | 1 | LEASE | N | 670 | 670 |
| LATOINA BAILEY | 7-01-2015 | 4 | 1 | LEASE | N | 670 | 670 |
| CONSTANCE ADAMS | 11-1-2016 | 4 | 1 | LEASE | N | 670 | 670 |
| SAUL WOODSON | 9-01-2015 | 4 | 1 | LEASE | N | 850 | 850 |
| ADRIA NORMAN | 8-01-2016 | 4 | 1 | LEASE | N | 750 | 750 |
| WILLIE ANDERSON | 4-01-2007 | 4 | 1 | LEASE | N | 550 | 550 |

FILED DATE: 8/13/2019 3:48 PM   2018CH11483

04/24/2017   14:41 Chicago Laramie Currency          (FAX)773 287 5227          P.004/005

# Apartment Rent Roll form

## Apartment Rent Roll

Borrower Name:

Property Address:

| Tenant Name | Tenant Since | Number of Rooms | Number of Bedrooms | Lease or Tenant at Will | Subsidized (Y/N) | Total Monthly Rent | Amount Paid By Tenant Per Mo. |
|---|---|---|---|---|---|---|---|
| MARY LEE | 11-01-2015 | 4 | 1 | LEASE | N | 900 | 900 |
| BRENDA WHITAKER | 9-01-2015 | 4 | 1 | LEASE | Y | 800 | 146 |
| BENNETA SYDNEY | 8-01-2015 | 4 | 1 | LEASE | N | 740 | 740 |
| MARELL COLLINS | 7-01-2015 | 4 | 1 | LEASE | N | 670 | 670 |
| YOLBMAN DORDEN | 8-01-2016 | 4 | 1 | LEASE | Y | 670 | 670 |
| VICTORIA SMITH | 7-01-2015 | 4 | 1 | LEASE | N | 700 | 700 |
| GEORGE DAVENPORT | 8-01-2015 | 4 | 1 | LEASE | Y | 580 | 75 |
| JOSE BERRIOS | 8-01-2014 | 4 | 1 | LEASE | Y | 825 | 215 |
| TYEISHA BOBO | 2-01-2017 | 4 | 1 | LEASE | N | 900 | 900 |
| WALTER HUMPHRIES | 4-01-2015 | 4 | 1 | LEASE | Y | 800 | 175 |
| BILL AND RUBY JONES | 7-01-2016 | 4 | 1 | LEASE | N | 670 | 670 |
| ZONIDA ASTOR | 8-01-2015 | 4 | 1 | LEASE | N | 670 | 670 |
| INGA TOTTY | 5-01-2011 | 4 | 1 | LEASE | N | 552 | 552 |
| JOHN AND VALENCIA | 4-01-2009 | 4 | 1 | LEASE | N | 670 | 670 |
| BERNICE GIPSON | 3-01-2016 | 4 | 1 | LEASE | N | 700 | 700 |

FILED DATE: 8/13/2019 3:48 PM    2018CH11483

# EXHIBIT C

4309
**RECEIVER'S BOND**

(Rev. 1/18/01) CCCH 0027

## IN THE CIRCUIT COURT OF COOK COUNTY, ILLINOIS

FIRST MERCHANTS BANK, an Indiana bank,
Formerly Known as FIRST MERCHANTS BANK,
N.A.

}

35BSBIC1197

v.

PLATINUM PROPERTY HOLDINGS, LLC AKA PLATINUM
PROPERTY HOLDINGS, INC. CITY OF CHICAGO, PIOTR
PALIDER, UNKNOWN TENANTS IN POSSESSION, UNKNOWN
OWNERS AND NON-RECORD CLAIMANTS

No. 18 CH 11483

### RECEIVER'S BOND

On ___ 3/20/19, Charles Delaney of Friedman Real Estate Brokerage II LLC ___ was

appointed receiver of property of respondent.

We jointly and severally bind ourselves to the People of the State of Illinois, that the receiver will in all respects faithfully discharge the duties of his/her receivership.

The obligation of this bond is limited to $ 20,000.00

Friedman Real Estate Brokerage II LLC

_____
As principal

Hartford Fire Insurance Company

_____
As surety
Jessica Ciccone, Attorney-in-Fact

Approved:

_____

☐

| Judge | Judge's No. |

Atty. No.: _____

Name: _____

Atty. for: _____

Address: _____

City/State/Zip: _____

Telephone: _____

**DOROTHY BROWN, CLERK OF THE CIRCUIT COURT OF COOK COUNTY, ILLINOIS**

FILED DATE: 8/13/2019 3:48 PM   2018CH11483

FILED DATE: 8/13/2019 3:48 PM   2018CH11483

# POWER OF ATTORNEY

*Direct Inquiries/Claims to:*
**THE HARTFORD**
BOND, T-12
One Hartford Plaza
Hartford, Connecticut 06155
Bond.Claims@thehartford.com
call: 888-266-3488 or fax: 860-757-5835

**KNOW ALL PERSONS BY THESE PRESENTS THAT:**

Agency Name: MARSH & MCLENNAN AGENCY LLC
Agency Code: 35-351317

| | |
|---|---|
| X | Hartford Fire Insurance Company, a corporation duly organized under the laws of the State of Connecticut |
| | Hartford Casualty Insurance Company, a corporation duly organized under the laws of the State of Indiana |
| | Hartford Accident and Indemnity Company, a corporation duly organized under the laws of the State of Connecticut |
| | Hartford Underwriters Insurance Company, a corporation duly organized under the laws of the State of Connecticut |
| | Twin City Fire Insurance Company, a corporation duly organized under the laws of the State of Indiana |
| | Hartford Insurance Company of Illinois, a corporation duly organized under the laws of the State of Illinois |
| | Hartford Insurance Company of the Midwest, a corporation duly organized under the laws of the State of Indiana |
| | Hartford Insurance Company of the Southeast, a corporation duly organized under the laws of the State of Florida |

having their home office in Hartford, Connecticut (hereinafter collectively referred to as the "Companies") do hereby make, constitute and appoint
Jessica Ciccone
of Lake Mary, Florida,
its true and lawful Attorney-in-Fact, to sign its name as surety(ies) only as delineated above by , and to execute, seal and acknowledge the following bond, undertaking, contract or written instrument:
Bond No. 35BSBIC1157
Naming Friedman Real Estate Brokerage II LLC as Principal,
and Circuit Court of Cook County as Obligee,
in the amount of See Bond Form(s) on behalf of Company in its business of guaranteeing the fidelity of persons, guaranteeing the performance of contracts and executing or guaranteeing bonds and undertakings required or permitted in any actions or proceedings allowed by law

In Witness Whereof, and as authorized by a Resolution of the Board of Directors of the Companies on May 6, 2015 the Companies have caused these presents to be signed by its Senior Vice President and its corporate seals to be hereto affixed, duly attested by its Assistant Secretary. Further, pursuant to Resolution of the Board of Directors of the Companies, the Companies hereby unambiguously affirm that they are and will be bound by any mechanically applied signatures applied to this Power of Attorney.



John Gray, Assistant Secretary

M. Ross Fisher, Senior Vice President

**STATE OF CONNECTICUT**  } ss. Hartford
**COUNTY OF HARTFORD**  }

On this 5th day of January, 2018, before me personally came M. Ross Fisher, to me known, who being by me duly sworn, did depose and say: that he resides in the County of Hartford, State of Connecticut; that he is the Senior Vice President of the Companies, the corporations described in and which executed the above instrument; that he knows the seals of the said corporations; that the seals affixed to the said instrument are such corporate seals; that they were so affixed by authority of the Boards of Directors of said corporations and that he signed his name thereto by like authority



Kathleen T. Maynard
Notary Public
My Commission Expires July 31, 2021

**CERTIFICATE**

I, the undersigned, Assistant Vice President of the Companies, DO HEREBY CERTIFY that the above and foregoing is a true and correct copy of the Power of Attorney executed by said Companies, which is still in full force effective as of March 21, 2019.
Signed and sealed at the City of Hartford.



Kevin Heckman, Assistant Vice President

FILED DATE: 8/13/2019 3:48 PM    2018CH11483

## RECEIVER'S BOND
## IN THE CIRCUIT COURT OF COOK COUNTY, ILLINOIS

Only the attorney-in-fact on file with the Court can execute this
bond.

FILED DATE: 8/13/2019 3:48 PM    2018CH11483

# EXHIBIT D

FILED DATE: 8/13/2019 3:48 PM    2018CH11483


**ACORD**

# CERTIFICATE OF LIABILITY INSURANCE

| DATE (MM/DD/YYYY) |
|---|
| 04/12/2019 |

THIS CERTIFICATE IS ISSUED AS A MATTER OF INFORMATION ONLY AND CONFERS NO RIGHTS UPON THE CERTIFICATE HOLDER. THIS CERTIFICATE DOES NOT AFFIRMATIVELY OR NEGATIVELY AMEND, EXTEND OR ALTER THE COVERAGE AFFORDED BY THE POLICIES BELOW. THIS CERTIFICATE OF INSURANCE DOES NOT CONSTITUTE A CONTRACT BETWEEN THE ISSUING INSURER(S), AUTHORIZED REPRESENTATIVE OR PRODUCER, AND THE CERTIFICATE HOLDER.

IMPORTANT: If the certificate holder is an ADDITIONAL INSURED, the policy(ies) must have ADDITIONAL INSURED provisions or be endorsed. If SUBROGATION IS WAIVED, subject to the terms and conditions of the policy, certain policies may require an endorsement. A statement on this certificate does not confer rights to the certificate holder in lieu of such endorsement(s).

| PRODUCER | CONTACT NAME: Keith Murphy |
|---|---|
| 235 Insurance | PHONE (A/C, No, Ext): (312) 720-1950     FAX (A/C, No): (312) 778-5163 |
| 800 W Diversey Pkwy | E-MAIL ADDRESS: admin@235insurance.com |
| | INSURER(S) AFFORDING COVERAGE    NAIC # |
| Chicago     IL   60614 | INSURER A : SCOTTSDALE INSURANCE    41297 |
| **INSURED** | INSURER B : |
| Platinum Property Holdings, Inc. aka Platinum Property | INSURER C : |
| Holdings Inc. and Piotr Palider | INSURER D : |
| 5235-5247 W Lake St | INSURER E : |
| Chicago     IL   60644 | INSURER F : |

| COVERAGES | CERTIFICATE NUMBER: | REVISION NUMBER: |
|---|---|---|

THIS IS TO CERTIFY THAT THE POLICIES OF INSURANCE LISTED BELOW HAVE BEEN ISSUED TO THE INSURED NAMED ABOVE FOR THE POLICY PERIOD INDICATED. NOTWITHSTANDING ANY REQUIREMENT, TERM OR CONDITION OF ANY CONTRACT OR OTHER DOCUMENT WITH RESPECT TO WHICH THIS CERTIFICATE MAY BE ISSUED OR MAY PERTAIN, THE INSURANCE AFFORDED BY THE POLICIES DESCRIBED HEREIN IS SUBJECT TO ALL THE TERMS, EXCLUSIONS AND CONDITIONS OF SUCH POLICIES. LIMITS SHOWN MAY HAVE BEEN REDUCED BY PAID CLAIMS.

| INSR LTR | TYPE OF INSURANCE | ADDL INSD | SUBR WVD | POLICY NUMBER | POLICY EFF (MM/DD/YYYY) | POLICY EXP (MM/DD/YYYY) | LIMITS | |
|---|---|---|---|---|---|---|---|---|
| A | X COMMERCIAL GENERAL LIABILITY | | | | | | EACH OCCURRENCE | $ 1,000,000 |
| |    CLAIMS-MADE X OCCUR | | | | | | DAMAGE TO RENTED PREMISES (Ea occurrence) | $ 100,000 |
| | | | | | | | MED EXP (Any one person) | $ 5,000 |
| | | X | | Pending | 04/12/2019 | 04/12/2020 | PERSONAL & ADV INJURY | $ 1,000,000 |
| | GEN'L AGGREGATE LIMIT APPLIES PER: | | | | | | GENERAL AGGREGATE | $ 2,000,000 |
| | X POLICY   PRO-JECT   LOC | | | | | | PRODUCTS - COMP/OP AGG | $ 2,000,000 |
| | OTHER: | | | | | | Deductible | $ 500 |
| | **AUTOMOBILE LIABILITY** | | | | | | COMBINED SINGLE LIMIT (Ea accident) | $ |
| | ANY AUTO | | | | | | BODILY INJURY (Per person) | $ |
| | OWNED AUTOS ONLY   SCHEDULED AUTOS | | | | | | BODILY INJURY (Per accident) | $ |
| | HIRED AUTOS ONLY   NON-OWNED AUTOS ONLY | | | | | | PROPERTY DAMAGE (Per accident) | $ |
| | | | | | | | | $ |
| | **UMBRELLA LIAB**   OCCUR | | | | | | EACH OCCURRENCE | $ |
| | **EXCESS LIAB**   CLAIMS-MADE | | | | | | AGGREGATE | $ |
| | DED   RETENTION $ | | | | | | | $ |
| | **WORKERS COMPENSATION AND EMPLOYERS' LIABILITY**   Y / N | | | | | | PER STATUTE   OTH-ER | |
| | ANY PROPRIETOR/PARTNER/EXECUTIVE OFFICER/MEMBER EXCLUDED?   N / A | | | | | | E.L. EACH ACCIDENT | $ |
| | (Mandatory in NH) | | | | | | E.L. DISEASE - EA EMPLOYEE | $ |
| | If yes, describe under DESCRIPTION OF OPERATIONS below | | | | | | E.L. DISEASE - POLICY LIMIT | $ |

DESCRIPTION OF OPERATIONS / LOCATIONS / VEHICLES (ACORD 101, Additional Remarks Schedule, may be attached if more space is required)
5235-5247 W Lake St, Chicago, IL 60644. TRIA excluded

Additional Insureds: First Merchants Bank (Plaintiff); Charles Delaney (Receiver); Friedman Real Estate Brokerage – IL, LLC (Agent); Friedman Real Estate Management (Agent); Cagan Management Group, Inc. (Managing Agent)

| CERTIFICATE HOLDER | CANCELLATION |
|---|---|
| | SHOULD ANY OF THE ABOVE DESCRIBED POLICIES BE CANCELLED BEFORE THE EXPIRATION DATE THEREOF, NOTICE WILL BE DELIVERED IN ACCORDANCE WITH THE POLICY PROVISIONS. |
| First Merchants Bank | |
| ISAOA ATIMA | |
| 1100 E Joliet | AUTHORIZED REPRESENTATIVE |
| Dyer     IN   46311 | |

© 1988-2015 ACORD CORPORATION. All rights reserved.

**ACORD 25 (2016/03)**      The ACORD name and logo are registered marks of ACORD

FILED DATE: 8/13/2019 3:48 PM   2018CH11483

**ACORD®**

## EVIDENCE OF PROPERTY INSURANCE

| | DATE (MM/DD/YYYY) |
|---|---|
| | 04/12/2019 |

THIS EVIDENCE OF PROPERTY INSURANCE IS ISSUED AS A MATTER OF INFORMATION ONLY AND CONFERS NO RIGHTS UPON THE ADDITIONAL INTEREST NAMED BELOW. THIS EVIDENCE DOES NOT AFFIRMATIVELY OR NEGATIVELY AMEND, EXTEND OR ALTER THE COVERAGE AFFORDED BY THE POLICIES BELOW. THIS EVIDENCE OF INSURANCE DOES NOT CONSTITUTE A CONTRACT BETWEEN THE ISSUING INSURER(S), AUTHORIZED REPRESENTATIVE OR PRODUCER, AND THE ADDITIONAL INTEREST.

| AGENCY | PHONE (A/C, No, Ext): (312) 720-1950 | COMPANY |
|---|---|---|
| 235 Insurance | | |
| 800 W Diversey Pkwy | | Seneca Specialty Ins. Co. |
| | | dba Donald Gaddis Companies |
| Chicago                                    IL   60614 | | 104 S Michigan Ave Ste 1025 |
| FAX (A/C, No): (312) 778-5163 | E-MAIL ADDRESS: admin@235insurance.com | Chicago                                      IL   60603 |
| CODE: | SUB CODE: | |
| AGENCY CUSTOMER ID #: | | |

| INSURED | LOAN NUMBER | | POLICY NUMBER |
|---|---|---|---|
| Platinum Property Holdings, Inc. aka Platinum Property Holdings Inc. | ATIMA | | ER835680 |
| and Piotr Palider | EFFECTIVE DATE | EXPIRATION DATE | ☐ CONTINUED UNTIL |
| 5235-5247 W Lake St | | | ☐ TERMINATED IF CHECKED |
| Chicago                                    IL   60644 | 04/12/2019 | 04/12/2020 | |
| | THIS REPLACES PRIOR EVIDENCE DATED: | | |

### PROPERTY INFORMATION

**LOCATION/DESCRIPTION**

Annual term hazard insurance at 5235-5247 W Lake St, Chicago, IL 60644. $14,972 premium.

THE POLICIES OF INSURANCE LISTED BELOW HAVE BEEN ISSUED TO THE INSURED NAMED ABOVE FOR THE POLICY PERIOD INDICATED. NOTWITHSTANDING ANY REQUIREMENT, TERM OR CONDITION OF ANY CONTRACT OR OTHER DOCUMENT WITH RESPECT TO WHICH THIS EVIDENCE OF PROPERTY INSURANCE MAY BE ISSUED OR MAY PERTAIN, THE INSURANCE AFFORDED BY THE POLICIES DESCRIBED HEREIN IS SUBJECT TO ALL THE TERMS, EXCLUSIONS AND CONDITIONS OF SUCH POLICIES. LIMITS SHOWN MAY HAVE BEEN REDUCED BY PAID CLAIMS.

### COVERAGE INFORMATION

| | PERILS INSURED | BASIC | BROAD | ☒ SPECIAL | |
|---|---|---|---|---|---|

| COVERAGE / PERILS / FORMS | AMOUNT OF INSURANCE | DEDUCTIBLE |
|---|---|---|
| Building | 3,000,000 | 10,000 AOP |
| Loss of Rents | 335,000 | |

### REMARKS (Including Special Conditions)

Special form, actual cash value, no coinsurance on building. Equipment breakdown included. TRIA, water backup excluded. Certain other exclusions apply. Additional Insureds: First Merchants Bank (Plaintiff); Charles Delaney (Receiver); Friedman Real Estate Brokerage – IL, LLC (Agent); Friedman Real Estate Management (Agent); Cagan Management Group, Inc. (Managing Agent)

### CANCELLATION

SHOULD ANY OF THE ABOVE DESCRIBED POLICIES BE CANCELLED BEFORE THE EXPIRATION DATE THEREOF, NOTICE WILL BE DELIVERED IN ACCORDANCE WITH THE POLICY PROVISIONS.

### ADDITIONAL INTEREST

| NAME AND ADDRESS | | | |
|---|---|---|---|
| | ☐ ADDITIONAL INSURED | ☐ LENDER'S LOSS PAYABLE | ☒ LOSS PAYEE |
| First Merchants Bank | ☒ MORTGAGEE | | |
| ISAOA ATIMA | LOAN # | | |
| 1100 E Joliet | ATIMA | | |
| | AUTHORIZED REPRESENTATIVE | | |
| Dyer                                      IN   46311 | | | |

ACORD 27 (2016/03)

© 1993-2015 ACORD CORPORATION. All rights reserved.

The ACORD name and logo are registered marks of ACORD

# MOTION FOR RELIEF FROM STAY

## EXHIBIT E

**IN THE CIRCUIT COURT OF COOK COUNTY, ILLINOIS**
**MUNICIPAL DEPARTMENT–FIRST DISTRICT**

THE CITY OF CHICAGO, a municipal corporation,
        Plaintiff,

No: 19 M1 4 00559

v.

Re: 5235-47 W Lake

Platinum Prperts Hldin DUC
     *et al.*,
     Defendant(s).

Courtroom 11 27, Richard J. Daley Center

## ORDER

This cause coming to be heard on the set call, the Court having jurisdiction over the below-named defendant(s) and the subject matter, being fully advised in the premises, and having heard evidence and testimony:

IT IS HEREBY ORDERED THAT:

① Receivdship continues, including ~~Vacate~~ collection

② Receivdship expanded to make emergency repairs to the plubing to stop all water leak in the basement cappad at not exces of $15,000 e.

IT IS FURTHER ORDERED THAT this cause be continued to __8 , 20 , 19__ at __130__ ~~a.m.~~ / (p.m.),

Courtroom 11 05, Richard J. Daley Center, 50 W. Washington St., Chicago, without further notice.

HEARING DATE: __7 / 16 / 19__

By: _____
Attorney for Plaintiff
Corporation Counsel #90909
30 N. LaSalle, Room 700
Chicago, IL 60602    (312) 744-8791

Associate Judge Patrice Ball-Reed

JUL 16 2019

Judge _____  Circuit Courtroom 11 1097

Bull Reed

Page ____ of ____

FORM BLE.1002   rev. 3/2011

# MOTION FOR RELIEF FROM STAY

# EXHIBIT F

Return Date: No return date scheduled
Hearing Date: 11/26/2019 1:30 PM - 1:30 PM
Courtroom Number: 1105
Location: District 1 Court
    Cook County, IL

FILED
11/20/2019 12:51 PM
DOROTHY BROWN
CIRCUIT CLERK
COOK COUNTY, IL
20191400559

7442739

FILED DATE: 11/20/2019 12:51 PM   20191400559

## IN THE CIRCUIT COURT OF COOK COUNTY, ILLINOIS
## MUNICIPAL DEPARTMENT – FIRST DISTRICT

| | | | |
|---|---|---|---|
| CITY OF CHICAGO, a Municipal Corporation, | ) ) ) | Case No.: | 19 M1 400559 |
| Plaintiff, | ) ) ) | Address: | 5235 W. Lake Street Chicago, Illinois 60644 |
| vs. | ) ) | | |
| PLATINUM PROPERTIES, *et. al.* | ) ) ) | | |
| Defendants. | ) ) | Courtroom: 1105 Richard J. Daley Center | |

### SUPPLEMENTAL BRIEF IN SUPPORT OF MOTION FOR APPROVAL OF RECEIVER'S FIRST INTERIM ACCOUNTING FROM

NOW COMES the Receiver, COMMUNITY INITIATIVES, INC. ("CII"), by its attorneys,

Hauselman & Rappin, Ltd., and for its Supplemental Brief in Support of its Motion for Approval of

its **First Interim Accounting** (the "Accounting") from **July 9, 2019 through August 31, 2019**, and

for Issuance of a Receiver's Certificate in the amount of **$69,287.78** it states as follows:

1.      On July 9, 2019, this Court appointed Community Initiatives, Inc. ("CII") as a Limited

Receiver of the property located 5235 W. Lake Street, Chicago, Illinois 60644 (the "Property") to

provide relocation to tenants and secure the Property once vacant.  CII now files its First Interim

Accounting.

2.      On October 3, 2019, CII filed its Motion for Approval of its First Interim Accounting

(the "Motion"), for the time period July 9, 2019 through August 31, 2019, and seeking approval of its

fees in the amount of $9,187.50 and costs in the amount of $60,100.28, for a total amount due to of

total amount of **$69,287.78**.

3.      On November 12, 2019, CII presented its Motion and after review, this honorable

Court requested a Supplemental Brief detailing the amount of relocation assistance provided to each

tenant at the Property and clarification as to the amount incurred during the board up of the Property.

**PAGE 2**

4400-847

4.      For the period of July 9, 2019 through August 31, 2019, CII provided relocation to the following individuals:

(1)      Willie Anderson, $865.00 for first month's rent;

(2)      Willie Lee, $750.00 for first month's rent and $375.00 for security deposit;

(3)      Jacqueline Benchaib, $750.00 for first month's rent and $750.00 for security deposit;

(4)      Ruby Moore, $300.00 for first month's rent;

(5)      Victoria Smith, $700.00 for first month's rent and $500.00 for security deposit;

(6)      Mariah Gilliam, $1050.00 for first month's rent and $450.00 for security deposit;

(7)      George Davenport, $750.00.00 for first month's rent and $750.00 for security deposit;

(8)      Tiffany Murray, $750.00.00 for first month's rent and $750.00 for security deposit;

(9)      Demoud Coles, $700.00.00 for first month's rent and $700.00 for security deposit;

(10)     Dashon Williams, $750.00.00 for first month's rent and $750.00 for security deposit;

(11)     Zenaida Astor, $750.00.00 for first month's rent and $750.00 for security deposit;

(12)     Shanice Hicks, $875.00 for first month's rent and $612.50 for security deposit;

(13)     Valencia Bell, $800.00 for first month's rent and $500.00 for security deposit;

(14)     Latrina Estes, $950.00 for first month's rent and $300.00 for security deposit;

(15)     Charles Bailey, $750.00.00 for first month's rent and $750.00 for security deposit;

(16)     Shontel Land, $592.78 for moving expenses; $1,800.00 for first month's rent;

(17)     Reginald Ricks, $750.00.00 for first month's rent and $750.00 for security deposit;

(18)     Kristy Ballard, $750.00.00 for first month's rent and $750.00 for security deposit;

The total amount of relocation assistance provided is **$24,820.28** for 18 tenants and CII now seeks reimbursement. *See* Mtn, Exh. 2, pg. 25-196.

5.      For the period of August 19, 2019 through August 22, 2019, CII contracted Clover Servicing to board and secure the Property upon vacation by all tenants. Clover and its agents board

FILED DATE: 11/20/2019 12:51 PM   20191400559

4400-847

up 354 openings at $60.00 per opening, for a total of $21,240.00. The additional costs included clean up at $450.00 and the cost of materials totaled $815.00 for locks, framing studs and chains. The total expended by Clover is **$22,580.00** and CII now seeks reimbursement. *See* Mtn, Exh. 2, pg. 22-24. Attached hereto as Exhibit A and incorporated herein are true and correct copies of pictures of the conditions at the Property and the board completed board up.

6.      The fees and costs detailed in the First Interim Accounting demonstrates that the Receiver's fees and the costs are reasonable for the work that was performed, and, accordingly, the Receiver, CII, seeks approval of its fees and costs and issuance of a Receiver's Certificate in the same amount.

WHEREFORE the Receiver, CII, prays that this Court enter an Order approving its **fees of $9,187.50** and **costs of $60,100.28** in the **total amount of $69,287.78** for the time-period of **July 9, 2019 through August 31, 2019**, and authorizing the issuance of a Receiver's Certificate in the amount of **$69,287.78** and for such other relief as the Court deems appropriate and just.

COMMUNITY INITIATIVES, INC.

BY:_____
        Megan McGillivary
        One of its Attorneys

HAUSELMAN & RAPPIN, LTD.
29 E. Madison Street, Suite 950
Chicago, Illinois 60602
Telephone:    (312) 372-2020
Cook County Firm No. 4452

FILED DATE: 11/20/2019 12:51 PM  2019L400559

**PAGE 4**

4400-847

FILED DATE: 11/20/2019 12:51 PM   20191400559

# EXHIBIT A

5235 W-LAKE St

FILED DATE: 11/20/2019 12:51 PM    20191400559





FILED DATE: 11/20/2019 12:51 PM   20191400559





FILED DATE: 11/20/2019 12:51 PM   20191400559





FILED DATE: 11/20/2019 12:51 PM 20191400559





FILED DATE: 11/20/2019 12:51 PM    20191400559





FILED DATE: 11/20/2019 12:51 PM   20191400559



FILED DATE: 11/20/2019 12:51 PM    20191400559





FILED DATE: 11/20/2019 12:51 PM 20191400559





FILED DATE: 11/20/2019 12:51 PM 20191400559





FILED DATE: 11/20/2019 12:51 PM   20191400559



FILED DATE: 11/20/2019 12:51 PM   20191400559





FILED DATE: 11/20/2019 12:51 PM 20191400559



FILED DATE: 11/20/2019 12:51 PM 20191400559





FILED DATE: 11/20/2019 12:51 PM 20191400559





FILED DATE: 11/20/2019 12:51 PM   20191400559



FILED DATE: 11/20/2019 12:51 PM 20191400559





FILED DATE: 11/20/2019 12:51 PM   20191400559





FILED DATE: 11/20/2019 12:51 PM   20191400559





FILED DATE: 11/20/2019 12:51 PM   20191400559





FILED DATE: 11/20/2019 12:51 PM   20191400559





FILED DATE: 11/20/2019 12:51 PM 20191400559





FILED DATE: 11/20/2019 12:51 PM    20191400559





FILED DATE: 11/20/2019 12:51 PM   20191400559





FILED DATE: 11/20/2019 12:51 PM   20191400559





FILED DATE: 11/20/2019 12:51 PM   20191400559





FILED DATE: 11/20/2019 12:51 PM 20191400559





FILED DATE: 11/20/2019 12:51 PM   20191400559





FILED DATE: 11/20/2019 12:51 PM    20191400559





FILED DATE: 11/20/2019 12:51 PM     20191400559





FILED DATE: 11/20/2019 12:51 PM   20191400559





FILED DATE: 11/20/2019 12:51 PM   20191400559





FILED DATE: 11/20/2019 12:51 PM    20191400559





FILED DATE: 11/20/2019 12:51 PM   20191400559





FILED DATE: 11/20/2019 12:51 PM    20191400559





FILED DATE: 11/20/2019 12:51 PM 20191400559





FILED DATE: 11/20/2019 12:51 PM   20191400559





FILED DATE: 11/20/2019 12:51 PM 20191400559





FILED DATE: 11/20/2019 12:51 PM    20191400559





FILED DATE: 11/20/2019 12:51 PM    20191400559





FILED DATE: 11/20/2019 12:51 PM   20191400559





FILED DATE: 11/20/2019 12:51 PM 20191400559





FILED DATE: 11/20/2019 12:51 PM    20191400559





FILED DATE: 11/20/2019 12:51 PM    20191400559





FILED DATE: 11/20/2019 12:51 PM  20191400559





FILED DATE: 11/20/2019 12:51 PM    20191400559





FILED DATE: 11/20/2019 12:51 PM 20191400559





FILED DATE: 11/20/2019 12:51 PM   20191400559





FILED DATE: 11/20/2019 12:51 PM    20191400559





FILED DATE: 11/20/2019 12:51 PM    20191400559





FILED DATE: 11/20/2019 12:51 PM 20191400559





FILED DATE: 11/20/2019 12:51 PM   20191400559





FILED DATE: 11/20/2019 12:51 PM   20191400559





FILED DATE: 11/20/2019 12:51 PM    20191400559



